KANAMU (w.) *vs.* C. B. WILSON, Marshal of the Kingdom.

EXCEPTIONS.

HEARING, DECEMBER 24, 1891.   DECISION, JULY 30, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.

A man, claiming to be the father of a certain child, complained to the Marshal that a native man was going to take his child to Kauai. The Marshal directed a police officer to go to the wharf to prevent any disturbance, and, if the matter could not be settled there, to bring the parties up to the Station House to settle it, but did not order the arrest or detention of any one. The officer brought a woman, the child and others to the Station House, where they remained until the Marshal came in.

The woman brought an action of trespass against the Marshal, and the jury rendered a verdict for the plaintiff.

Held, that the Marshal was not liable, there being no sufficient evidence that he ordered the police officer to arrest the woman, or to detain her at the Station House.

Held, that the Marshal is only liable for the acts of his deputies.

OPINION OF THE COURT, BY BICKERTON, J.

This is an action for an alleged false imprisonment, involving wrongful arrest. The case was heard before the Chief Justice and a mixed jury at the October Term (1891) of the Court. The jury rendered a unanimous verdict for the plaintiff, and assessed damages at $375. Defendant's counsel noted exceptions to the verdict, as being contrary to the law and the evidence, and gave notice of a motion for a new trial, and thereafter filed his written motion, on the grounds, (1) that said verdict was contrary to law and the weight of evidence, and (2) that there was misconduct on the part of the jury in arriving at their verdict. On December 11th, 1891, the motion was argued before Chief Justice Judd, who ordered the verdict to be set aside and a new trial granted, on the ground that there was

no evidence to support the verdict.    At this hearing, the second ground, that of misconduct of the jury, was abandoned by the defendant, and the plaintiff, by her attorney, excepted to said order and ruling.    The matter is now here on the plaintiff's bill of exceptions.

The plaintiff claims that she was arrested by a police officer, acting under order of the defendant, on the wharf of the Inter-Island Steamship Company, in Honolulu, on May 9th, 1891, when about to embark for her home on Kauai, and was taken to the Police Station at about five o'clock in the afternoon, and there detained until about 9 o'clock, P. M.

The question is, was there an arrest and detention by order of defendant, the Marshal?    If an arrest was made without the order or direction of the defendant, he cannot be held liable for the same.    The Marshal is not liable for the acts of police officers; he is only liable for the acts of his deputies.    Laws of 1888, Chapter VIII., Sections 8 and 11.

The evidence of what orders or instructions defendant gave Officer Crabbe is that of the officer himself, the defendant, and his deputy, Mr. Mehrten.    The evidence of Crabbe cannot be relied on; it is very contradictory and uncertain; then, after the evidence of C. W. Ashford as to his conversation with Crabbe, how can it be given any weight?    Such evidence would certainly not be sufficient in itself on which to base a finding of fact by a jury.    The evidence of defendant and Mehrten is positive and certain in this regard.    It is, that a man named Enders came to defendant and complained that a native man was going to take his, Enders', child off to Kauai; that defendant then asked if he, Enders, was the father of the child, to which Enders replied he was; that defendant said, "If you are the father of the child, why do you not go and get it back?"    Enders said he was afraid of the native, that he might do him some bodily harm.    Thereupon defendant instructed Crabbe to go with Enders and see that there was no disturbance, but no orders were given to arrest any one, and that nothing was said about a woman.    The defendant also says, "I might have given Crabbe instructions to bring them up to the Station House in

case they could not settle the matter down there; this custom is quite general; had no idea any force would be used." This ·evidence is uncontradicted. The only occasion on which defendant was in any way concerned in this matter before the arrest was when Enders came to him and asked for the assistance of a police officer. How could defendant then have ordered the arrest of the plaintiff (a woman), when, as far as defendant was informed, there was no one but the native man and child in the matter. It may be true that Crabbe did say, as the plaintiff says he did, that he arrested plaintiff by order of the Marshal. This does not by any means prove that the defendant did order the arrest; it is necessary to show the authorizing ·words of the principal himself.

We are therefore of opinion that the evidence does not support the finding that defendant authorized or ordered the arrest of plaintiff.

The next question is, was there such subsequent ratification by defendant as would make him liable? It is clear that Officer Juen, the Station keeper, telephoned to the Marshal, who was at dinner at the time, that the parties whom Crabbe brought were at the Station House, but both he and the defendant say that no names were mentioned at the time. Juen says that the Marshal told him "to keep them there." The defendant says he does not remember saying this; even if he did, it could not in any way be construed to mean the detention (if it meant such) of the woman, for, as far as the evidence goes, there is nothing to show that he had any information that there was a woman in the matter, or that the arrest of any one had been made, much less the arrest of the woman.

When the Marshal returned to the Station to settle the matter, all agree that he came in and found the parties sitting and standing around; that he sat in the midst of them and discussed the matter with them, and that there was no charge entered against any of these people.

We are of opinion that there is no evidence to support the finding of fact, that defendant ratified or intended to ratify any arrest that may have been made, for there is nothing to

show that he knew that an arrest had been made of any one, and certainly not of the plaintiff, a woman. In regard to the woman's being prevented from going home to Kauai by the steamer Mikahala, the evidence shows that Paukanani (the native man) went on board the steamer to see if the purser would take his horse that trip, and the purser refusing, that Paukanani then returned to plaintiff and told her that they could not go. This, if true, would account for and explain their remaining.

. To warrant a verdict for plaintiff, the jury would have to find that defendant ordered the arrest of the plaintiff, or if he did not order it, then that after the arrest (if there was one) he ratified it. As we have said before, there is no evidence to support these findings of fact. It may be, as argued by defendant's counsel, that the jury decided the case on the supposition that it turned solely on the question of ownership of the child, but that was not the issue in this case.

. We therefore overrule the exceptions and order a new trial, upon the ground that there is not sufficient evidence to support said verdict. ·. · ·

· DISSENTING OPINION, BY DOLE, J.

The plaintiff claims damages for illegal arrest and imprisonment by the Marshal. The issue now before this Court is solely whether the verdict for the plaintiff was against the law and evidence.

It is a settled principle in this Court in such cases, that it may not consider whether or not it would have decided the case differently from the verdict of the jury, but must simply seek to ascertain whether there was any substantial evidence supporting the verdict.

. It is not denied that there is evidence showing the arrest of the plaintiff by Officer Crabbe ; there is in fact a large amount of testimony on this point from Paukanani, the plaintiff's escort, Kia Enders, the plaintiff's sister, and the plaintiff herself. There is also the evidence of Officer Juen, that at the Station House Crabbe passed the plaintiff over to his custody.

But it is contended by the defendant that if the plaintiff was arrested, he was not liable therefor, because his instructions to Crabbe related to a man instead of a woman. This being supported by the evidence, and there being no evidence against it, would relieve him of responsibility in the matter if the case ended there. But there is evidence to the effect that, during the evening, Juen telephoned to the Marshal this message: " I have got these parties here that Crabbe brought here; child case. What shall I do with them?" The answer was, " Keep them there." This was a quarter or half-past 7 P.M. There is evidence that later the Marshal arrived at the Station House, and immediately devoted himself to the solution of the question of the custody of the child, who was then in plaintiff's arms. About three-quarters of an hour was occupied in the matter, and then the child was taken by Enders from plaintiff's arms, under the active supervision of the Marshal, and, according to one witness, by force, leaving the plaintiff weeping. She was then allowed to depart.

There is considerable evidence to the effect that the Marshal authorized the unwarranted arrest of some one, a native man, supposed to be in possession of the child. The Marshal in his own testimony says: " I did not tell the officer to arrest anyone ; I might have given Crabbe instructions to bring them up to the Station House in case they could not settle the question down there. This custom is quite general. Had no idea that any force would be used." This alone is evidence upon which the jury had the right to conclude that the Marshal authorized an unwarrantable arrest of somebody. There was evidence enough to lead the jury to believe that when the Marshal learned by telephone that parties in possession of the child in question had been brought by Officer Crabbe to the Station House, he gave orders to " keep them there." When the Marshal arrived at the Station House and found that the party brought there by Crabbe was a woman, instead of a man as he had supposed, he did not clear himself of responsibility as he might have done by instantly releasing her, but there is sufficient evidence to have justified the jury in concluding that he ratified the pre-

vious arrest and imprisonment, by continuing the latter for a period of three-quarters of an hour, and that he used the terrifying influences of this forcible detention in the Station House to deprive the plaintiff of an infant which was in her possession with its own mother's consent.

I find, therefore, that there was evidence to prove the arrest of the plaintiff by Officer Crabbe at about 5 o'clock P.M.; there was evidence that she was taken to the Station House and placed in charge of Officer Juen, and kept by him in detention against her will until a little after 8 o'clock P.M.; there was evidence that the Marshal authorized the arrest of some unknown man, and after the arrest of plaintiff, authorized her continued detention until he should arrive, without, however, knowing it was the plaintiff who had been arrested; and there was the evidence of Officer Juen, Sam'l Kuula, Paukanani, Kia Enders, the plaintiff, Deputy Marshal Mehrten, and the defendant, which tended to prove that the Marshal continued the detention of the plaintiff from the time he arrived at the Station House until she surrendered the child.

There was substantial evidence upon all these points, and the jury having found for the plaintiff, this Court may not disturb their verdict.

*Ashford & Ashford,* for plaintiff.

*Thurston & Frear* and *A. Rosa,* for defendant.