# PROVISIONAL GOVERNMENT OF THE HAWAIIAN ISLANDS *vs.* JOSEPH CAECIRES.

## EXCEPTIONS.

HEARING, JULY 2, 1894.                DECISION, JULY 17, 1894.

### JUDD, C.J., BICKERTON AND FREAR, JJ.

(1) An indictment charging that "one A. B. * * * C. D. did assault, strike, cut," &c., is not bad on the ground that the object comes before the verb.

(2) Under the statute making murder of two degrees (Chap. 71, Laws of 1890),the omission in the indictment of the words " deliberate, premeditated " before the word " malice " charges murder in the second degree.

(3) Where the second count in the indictment fully and plainly sets out the manner and means by which the death was caused, it does not become necessary to consider whether the first count which is the form authorized by statute (page 342 of Compiled Laws), is contrary to Article 7 of the Constitution of 1887.

(4) Chapter 49 of the Penal Code (Sec. 5) authorizes an arrest without a warrant by an officer of justice in a seaport or town when the defendant is found under such circumstances as would justify the suspicion that he has committed or intends to commit an offense.

(5) If the defendant attempts to escape, the officer is authorized to detain him, and if the officer is immediately attacked by defendant with a dangerous weapon, allowing no opportunity for the officer to declare that he is an officer of justice, this fact alone does not render him a trespasser.

(6) The law does not require that a person attempting to escape from an officer should be notified of his official character before the officer places his hand upon him. The notification may be coincident with the placing the hand on the defendant and may not be made at all if the circumstances render this impossible.

(7) Deputy clerks of the Judiciary Department are clerks of the Circuit Court, First Circuit, and as such are authorized with a circuit judge to draw juries.

(8) *The Queen vs. Leong Man*, 8 Haw. 339, affirmed.

(9) In a case not capital it is within the discretion of the court to allow the jury to separate during the trial.

(10) The jury must be satisfied that the deceased came to his death as a consequence of the wounds inflicted by the defendant.

(11) Instructions not pertinent to the facts of a case need not be given.

OPINION OF THE COURT, BY JUDD, C.J.

The defendant was indicted at the May Term, 1894, of the Circuit Court, First Circuit, for murder in the second degree in killing one James Kauhane on the 19th of February, 1894. He was found guilty by the jury and sentenced. Before pleading, his counsel, J. A. Magoon, Esq., moved to quash the indictment on several grounds.

The indictment is as follows :

" The Attorney-General of the Hawaiian Islands, on behalf of the Provisional Government of the Hawaiian Islands, upon his official oath, presents that Joseph Caecires, a foreigner by birth, of Honolulu, in the island of Oahu, at Honolulu in the island of Oahu, and within the jurisdiction of this Honorable Court, on the ninteenth day of February, in the year of our Lord one thousand eight hundred and nine-four, with force and arms, feloniously, willfully and of his malice aforethought, and without authority, justification or extenuation by law did kill and murder one James Kauhane, and did then and there and thereby commit the crime of murder in the second degree contrary to the form of the statute in such case made and provided.

" And so the Attorney-General aforesaid, upon his official oath aforesaid, doth further say and present that the said Joseph Caecires, a foreigner by birth, of Honolulu, in the island of Oahu, at Honolulu, in the island of Oahu and within the jurisdiction of this Honorable Court, on the nineteenth day of February in the year of our Lord one thousand eight hundred and ninety-four; with force

and arms, in and upon one James Kauhane, feloniously, willfully and of his malice aforethought without authority, justification or extenuation by law did make an assault with a certain knife, and the said James Kauhane then and there did strike, stab, cut, wound and beat, then and there and thereby giving to the said James Kauhane certain mortal wound or wounds, of which said mortal wound or wounds the said James Kauhane, from the said nineteenth day of February to the twentieth day of said February, at Honolulu aforesaid, did suffer and languish, and languishing did live, on which said twentieth day of February aforesaid, in the year aforesaid, at Honolulu aforesaid, he, the said James Kauhane, of the wound or wounds aforesaid, died.

"And so the Attorney-General aforesaid, upon his official oath aforesaid, doth say and present that the said Joseph Caecires, him the said James Kauhane in manner and form aforesaid, then and there, feloniously, willfully and of his malice aforethought, and without authority, justification or extenuation by law, did kill and murder, and did then and there and thereby commit the crime of murder in the second degree, contrary to the form of the statute in such case made and provided."

The motion to quash is as follows: "Now comes defendant in the above entitled cause by his attorney J. Alfred Magoon, and moves to quash the indictment therein for the reasons.

"1st. That it is not alleged in said indictment that the defendant did strike, stab, cut, wound and beat James Kauhane.

"2d. That it is not alleged in said indictment that the wounds of which said Kauhane died were inflicted by a knife in the hand of and wielded by defendant.

"3rd. That the description of the crime of which defendant is charged in said indictment is murder in the second degree, whereas the said indictment purports to be for murder in the first degree.

"4th. That the indictment charges the defendant with no indictable crime under the law.

"And that the said indictment is in other respects uncertain and insufficient."

Reference to the indictment will show that the object of the verbs, "assault, strike, stab, cut, wound," etc., is "James Kauhane," though placed before the verbs. This is not an unusal method of constructing a sentence. The subject of the verb is the defendant and the object is James Kauhane, and we find that it is alleged in the indictment that the defendant Joseph Caecires did assault, strike, cut, stab, wound, etc., James Kauhane.

We overrule the second ground without comment, as it needs none.

We answer the third objection to the indictment by stating that in omitting the statutory words "deliberate, premeditated" before the word "malice" the indictment charges murder in the second degree. See Chap. LXXI., Laws of 1890.

Under the last ground of the motion to quash it is claimed that the statute, pages 342 and 343 of the Compiled Laws, is contrary to Article 7 of the Constitution of 1887, which requires that an indictment shall "fully and plainly" describe the offense. The statute is as follows:

"In an indictment for murder or manslaughter or for being an accessory to any murder or manslaughter, it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in any indictment for murder to charge that the defendant did feloniously, willfully, and of his malice aforethought, kill and murder the deceased."

We are not to consider questions as to the constitutionality of a statute unless they are essential to the decision of the case. And it is not necessary here, for the second count of the indictment, in our opinion, meets the requirements of the constitution that the crime must be fully and plainly

described and we pass by the question whether or not the first statutory count of the indictment does.

We overrule the exceptions to the motion to quash.

In order to understand the points raised by the bill of exceptions, the facts of this homicide must be presented, and we condense them from the testimony sent up, as follows: On the 19th February last, in Honolulu, a Chinaman reported to two detective police officers, James Kauhane and Kaouli by name, that opium would be brought ashore that evening by a foreigner from the bark S. C. Allen, then lying at Brewer's wharf. The informant accompanied the officers to near the foot of Maunakea street, and as the defendant made his appearance from the direction of the vessel, told the officers that he was the man and then went off. The officers let defendant pass them, up Maunakea street, they following defendant who crossed diagonally from one side of the street to the other side, walking rapidly and looking back occasionally and the officers walking after him, they having agreed between them that they would not arrest defendant until he was nearer the electric light on King street, so. that they could see where he should go if he attempted to escape. Before the light was reached Kaouli went a little ahead of Kauhane, and when he had nearly reached defendant, defendant started to run and Kaouli jumped forward and caught defendant by both wrists from behind. Defendant swung his hands behind him and drew Kaouli up to him. Immediately Kauhane came up, brushed Kaouli aside and seized defendant firmly and in the struggle both fell into the gutter close to the sidewalk, Kauhane on top. Kaouli felt, just as Kauhane came up, that he was getting faint and dizzy, and discovered that he had been cut. He says he was cut on his leg before Kauhane pushed him aside, and upon his arm just as he was pushed aside. As Kauhane was struggling with defendant and before they fell, he, Kauhane, called to Kaouli to seize defendant which he did, and pushed him on to the hydrant. When Kauhane and defendant were in the gutter Kaouli felt of his thigh and found it covered with blood, and

then called out to Kauhane that he was cut, and Kauhane said, "I am cut, too." Kaouli jumped on defendant again and then noticed that defendant had his knife in his left hand, and Kauhane was bearing down on it to get possession of it. Kaouli then held down the right arm of defendant (so defendant could not use it) and Kauhane took the knife from him. The knife was handed first to a girl who had run up after the struggling began, and it finally passed to the officers of the police station. Its identity was fully shown. It is a large, heavy kitchen knife with a heavy blade about twelve inches long which comes to a point on both edges.

The jury were authorized from this testimony to find, if they believed it, that (first) the defendant started to run from the officers, and, as Kaouli testified, he had no opportunity to tell him that he was a police officer and that he was intending to arrest him; (second) that defendant began as soon as caught by his wrists from behind, to use his knife slashing behind, first at Kaouli and then at Kauhane, wounding them both seriously. From the places on the body of Kauhane on which the two serious wounds were, as described by Dr. Wood, the one on his right thigh about six inches long and three inches deep, and the other above the left knee, the jury would be justified in finding that defendant inflicted them while both he and Kauhane were standing, and before Kauhane and Kaouli had thrown defendant on the ground. Also that the violence used by both Kaouli and Kauhane was for the purpose of getting the knife away from defendant, and no more force was used than was necessary. Also that the circumstances do not show any danger of life or limb to defendant, either real or apparent, or such as would justify the use of a lethal weapon in self-defense. The further testimony of Kaouli sustains the view that no weapons were used by Kaouli or Kauhane upon defendant until after he had wounded them both with the knife, and that defendant did not cut Kauhane after being beaten by him. Kaouli says that just as the knife was taken from defendant Kauhane said, while holding defendant on the ground, that he was

afraid defendant would escape and told Kaouli to beat him. Kaouli then noticed his pistol on the ground, took it, and with it struck defendant on the head. The impact of the pistol (which was self-cocking) on defendant's head, Kaouli says, caused its discharge. Kauhane told Kaouli not to shoot him. Kaouli, though faint, and his leg and arm numb from the wounds, jumped on defendant and kicked him as well as he could. Help was called, and finally other officers came, and all three, defendant and Kauhane and Kaouli, were taken in hacks to the station house in a weak and wounded condition, and all were afforded surgical treatment. Defendant and Kaouli, after several weeks, recovered. Kauhane died in the early morning of the 21st February last, about thirty-two hours after receiving his wounds. When the officers picked up defendant to convey him to the station house, a tin of opium was found on his person, another was taken from his coatpocket on reaching the station house, and three more were found where the struggle had taken place. The jury had a right to find from this evidence that the defendant, being a steward of a foreign vessel, had brought the opium ashore from her, and was therefore engaged in smuggling when stopped by Kaouli. If there was any doubt as to the act of smuggling, the facts would justify the jury in holding that defendant had opium in possession, which is illegal. These were circumstances that justified officer Kauhane's suspicion that an offense had been committed or that defendant was intending to commit an offense.

The law (Penal Code, Chapter 49) allowing arrests to be made without a warrant in a seaport or town when the offender is in the act of committing an offense, or even when it is not certain that an offense has been committed, would justify the jury on the facts above detailed in holding that Kauhane and his brother officer were not trespassers in stopping the defendant so as to justify defendant's violent resistance. The evidence in regard to the opium was therefore extremely pertinent, and its introduction was proper. The law does not make it imperative that the officer shall

declare that he is an officer of justice *before* he puts his hand on the supposed offender. The statute (Sec. 6, Chap. 49, Penal Code), reads: "At or before the time of making an arrest, the person must declare that he is an officer of justice, if such be the case. * * * If he make the arrest without warrant * * * he should give the party arrested clearly to understand for what cause he undertakes to make the arrest, and must require him to submit and accompany him to the jail or magistrate. This done, the arrest is complete." The law does not require impossibilities. The parties were engaged in a deadly conflict, and if the jury found (as they would be justified in finding), that the defendant, the officers having reason to believe that he was committing an unlawful act, started to escape as soon as the officers came up to him and, when stopped, immediately began cutting the persons endeavoring to detain him, with a deadly knife, they would be authorized to find that the further efforts of Kaouli and of the deceased officer Kauhane to detain him, were justified, even though no formal arrest was made. We must not lose sight of the fact that the assault with a knife was an offense in itself for which the officers had a right to hold defendant. The seventh and eighth sections of this chapter on arrest have a strong bearing on this case:

"In all cases where the person arrested refuses to submit or attempts to escape, such degree of force may be used as is necessary to compel him to such submission.

"He who makes an arrest may take from the party arrested all offensive weapons which he may have about his person, and must deliver them to the magistrate, to be disposed of according to law."

To resume the narrative, Kauhane, though apparently doing well after his injuries, died unexpectedly, in about thirty-two hours. The surgeon of the hospital who made the autopsy, Dr. C. B. Wood, testified that in his opinion Kauhane died as the result of there being carried a clot of blood to the heart through a vein from one of several wounds that he had on his body, and that he found no other sufficient

cause of death. (Page 62 of testimony.) The doctor's explanations were full and sufficient to convince the jury that these wounds were the immediate cause of his death.

Having thus reviewed the facts of the case, we overrule the motion for a new trial made, on the ground that the verdict was contrary to law, the evidence and the weight of evidence.

The charge of the Court was as follows :

" Gentlemen, you have listened to the evidence and have heard the argument of the counsel, and it now becomes my duty to instruct you as to the law which is to govern you in the consideration of this case.

" The defendant is charged with having committed the crime of murder in the second degree.

" Murder in this country is a statutory crime and is defined to be the killing of any human being with malice aforethought without authority, justification or extenuation by law. Murder committed with deliberate premeditated malice aforethought or in the commission of or attempt to commit any crime punishable with death, or committed with extreme cruelty is murder in the first degree. Murder not appearing in the first degree is murder in the second degree.

" You are the sole judges of the facts as placed before you by the testimony of the witnesses. It is not in the province of the Court to comment upon the character, strength, weakness or credibility of any evidence which has been presented by either side, but it is for your consideration alone.

" Justifiable homicide is the killing of any human being without any ill intention or desire, such as the execution of a criminal by a duly authorized officer in accordance with law, or when done by lawful war upon an enemy in battle ; it may also be justifiable in necessary self defense. A man in the defense of his person against another who manifestly intends to do him violence, may repel force by force but he must have been in imminent and manifest danger either of losing his life or some violent and serious injury before the law will justify him in taking the life of another. The danger must have been actual and required urgent steps. The mere

unexecuted scheme or plans of another is not a necessity for the exercise of extreme measures. A man is not obliged to wait until he has received an injury before repelling the attack, he may anticipate the attack of his adversary, but he must have in good faith and with honest intent endeavored to have avoided the violence of the assault. A delusion that a man is to be attacked by another will not justify him in taking the life of another unless it is shown that the danger is real and extreme. The means of defense must be in proportion to the danger. If one retaliates with a weapon entirely out of proportion to the attack threatened, then he is not justified if he killed his adversary. The law looks with extreme disfavor upon the use of any weapon calculated to produce death and requires the best of reasons to show justification or excuse.

"Many instances have occurred in which death has been caused by the use of an instrument not in itself dangerous, but by reason of peculiar circumstances, or because some extremely vital or sensitive spot has been injured and death was the result. The law in its leniency has allowed the crime to be reduced from murder to manslaughter, for the law seeks to punish only those who have been clearly proven to be guilty to give the defendant the benefit of all doubt as to his manifest and certain intent. But the law also demands that all rules for the protection of life and property shall be literally complied with, and holds sternly to account all those who are transgressors. The life of a man is considered the most precious of all things on earth, and he who takes the life of another without justification is guilty of the highest social crime known to our law, and with two exceptions is only equalled in its punishment for the political crime of treason. For these reasons the law scrutinizes every act connected with the killing of every human being with the utmost particularity in order to determine the guilt or innocence of the accused. And this necessity has arisen so often that the rules of law made use of in determining such cases are plain and well defined.

"Excusable homicide is where a person is doing an act in itself lawful and by accident kills another; as where a man is working with an ax or hammer and without any fault or negligence on his part the head flies off and kills a bystander. Here again the law interposes and does not allow the unfortunate one to be punished, provided that it is fully proven that it was by accident pure and simple. But if the killing be shown to have been done while in the performance of a legal act, yet accompanied by negligence on the part of the accused, the law will hold him responsible in the degree of his culpability. So strongly does the law draw the lines in this regard, that where the performance of the act is of itself legal, yet if anyway likely to produce death, the utmost care is required to be preserved by all engaged in the transaction. But in cases of this nature the elements which are necessary to constitute the crime of murder, namely, that of malice, is wanting; this then is the distingushing line between the crime of murder and the lesser one of manslaughter.

"Malice is the impulse which stimulates desire and formulates the attempt which leads a man to commit a crime. It is the presence of this intent, founded upon malice, which determines the nature of the act, and without it the act of murder cannot be committed. It becomes necessary then that we consider with precision this distinction, in order that we may have a clear and intelligent understanding as to the legal character of the act and what evidence is required in order to determine its presence.

"Every person is presumed to be innocent until he has been proven to be guilty, and the law also presumes that every sane person intends the natural and ordinary consequences of his intended act. Every person is presumed to be sane until proven to be otherwise. The intent with which an act was done is to be gathered from all the circumstances attending it. If a person deliberately sets himself to accomplish a certain thing he is presumed to intend all the probable and natural results of his act, and the law does not permit him to say after the commission of the act that he

did not intend its results, but he must, in case death has resulted, show justification or excuse. It is the intent which constitutes the criminality of the act, and where the act in itself is indifferent and only becomes criminal when done with particular intent, then the intent must be proved. But where the act in itself is unlawful, the burden is upon the defendant to show justification or excuse, and upon failure to do so the law implies a criminal intent. So where the act of killing another is proved, malice aforethought shall be presumed, and the burden rests upon the party who committed the act to show that it did not exist, or he must show a legal justification or extenuation therefor. Malice is not restricted specially towards the person assaulted, but is understood to be that general recklessness of the lives of others, and were the act done deliberately and without sufficient provocation, the law presumes that it was done in malice. The rule then established by the authorities is that the implication of malice arises in every case of intentional homicide. The killing having first been proven, the circumstances of the incident are to be established by the party charged in order to show a justification or excuse, and where from the evidence introduced there is nothing to show such justification and excuse, then the presumption of malice is not rebutted. So, when one person assaults another with a deadly weapon, and the life of the party assailed is destroyed, the presumption is that death was intended, and there can be no presumption of any probable motive or legal excuse. The consequence is, that there is nothing to rebut the presumption of malice. If the malicious intention precede the act, it is sufficient. It follows, therefore, that the term malice aforethought does not imply that any considerable lapse of time is necessary between the malicious intent and the actual execution of the intent. The rule being that there should be a definite purpose does not mean this intention must have been the result of a cool and deliberate judgment, and with previous malignity of heart. Every material fact essential to establish the offense must be substantiated in your mind, but

it is not necessary for you to separate the facts in findings, nor to detach one fact from the other.

" So in this case, if you find that Kaouli and Kauhane had such information as justified them in having a reasonable suspicion that the defendant was engaged in an unlawful act, such as having opium in his possession without ` license, and there is evidence tending to prove that fact; then if they were policemen or other officers of justice, Honolulu being a seaport town, they had a right to arrest the defendant, and that too without a warrant. But at or before the time of making the arrest they must have declared themselves to have been officers of justice, and have given the defendant clearly to understand for what cause they undertook to arrest him. Failing in this, they were not justified in subjecting him to arrest, and the defendant had the right to resist so far as to protect himself from immediate bodily harm ; but his resistance must have been in proportion to the force used upon him. The law does not require impossibilities, so in this case if you find that Kaouli and Kauhane were acting under such a state of facts as justified them in making the arrest without a warrant, and this defendant committed the assault upon Kauhane and inflicted wounds upon him from which he died, and that Kauhane had no opportunity of making the defendant acquainted with his authority for making the arrest, then the defendant would not be justified if he intended to inflict the wounds.

" You must be satisfied that the wounds said to have been inflicted by the defendant were the primary cause of Kauhane's death ; if so, it is no excuse for the defendant that other bodily defects contributed to the death of Kauhane, or that the wounds of Kauhane were not properly cared for, and that he died from such cause. The burden is upon the defendant to show you that the wounds were not the prime and immediate cause of death, but that the neglect to care properly for the wounds or other bodily defects were the immediate cause of death.

"Kauhane must have died within a year from the date upon which he is said to have been wounded.

"There is a difference between civil and criminal cases as to the degree or quantity of the evidence which will warrant the jury in making their finding or verdict. In civil cases it is the duty of the jury to weigh the evidence and find in favor of the party who has introduced the best evidence, or, in other words, in whose favor the evidence preponderates. This is not the rule in criminal cases; the guilt of the defendant must be fully proved. Neither the quality nor the quantity of the evidence is to be the standard; it must be convincing beyond a reasonable doubt. This does not mean beyond the possibility of a doubt, for in all affairs with which men have to do and which depend upon proof or disproof, there is a possibility of a doubt. After having heard the evidence in this case, and upon a careful consideration of it in all its phases, you should feel that the truth of this charge has not been proven to a moral certainty, then you will give defendant the benefit of that doubt. Such certainty must be convincing and satisfying to the minds of you gentlemen who are bound to consider the case conscientiously. It is my hope that I have impressed upon your mind the high and extreme regard which the law places upon human life, as well as the life of the deceased, whose death is the cause of this trial, as that of the defendant, whose liberty is now in jeopardy by it.

"If you find that Kauhane came to his death by the hands of defendant, and that such act was committed with malice aforethought, without authority and justification or extenuation by law, you must find him guilty of murder in the second degree, as charged. If you find, however, that Kaouli and Kauhane were acting without authority and that the arrest was clearly illegal, such an arrest should be considered such provocation as will reduce the crime from murder to manslaughter. And if you do not find that the defendant is guilty of either murder or manslaughter, then you may find him guilty of assault and battery. And, last of all, if you find

that the defendant was justified or excusable in accordance with the rules which I have stated before, then you will acquit him.

"I will now read you several instructions which have been asked for on behalf of the defendant.

"1st. In order to find defendant guilty of murder in the second degree as charged, you must find that he killed Kauhane with malice aforethought, without authority, justification or extenuation by law, and if you find that any of these elements are lacking, you may find defendant guilty of manslaughter in any of the three degrees, or of assault and battery in case the facts proved in your opinion warrant the same.

"2nd. Self-defense is the first law of nature and civilization. Every man is at liberty to defend his person, his domicile and his family against the assaults of any other person.

"3rd. The right of self defense extends to the taking of the life of the assailant should such course be necessary to the protection of the person from either death or serious bodily injury.

"4th. All necessary means of defense are allowed to all men when attacked. But the law does not require that a person when attacked shall stop to carefully consider, or studiously select the means of his defense. He is at liberty to use such means as are accessible and what appears to him to be reasonably necessary to secure his protection, but he is still responsible for the results of excessive force.

"5th. Though the officers were attempting to arrest defendant for the alleged offense of having opium unlawfully in possession, they had no right to kill defendant if he resisted unless in their own self defense.

"The 6th, 7th and 8th I refuse.

"9th. If you find there was an assault made by defendant upon Kauhane, it is justifiable if the defendant had reasonable grounds to believe and did honestly believe that it was necessary to preserve his life or to prevent great bodily injury. If the act was committed under a reasonable fear by

defendant of great bodily harm, or if it appeared to defendant that he might be in danger of great bodily harm, the killing was justifiable, but not so if the means used were out of proportion to the force used upon him.

" The 10th, 11th, 12th, 13th and 14th are refused.

" 15th. Not only must the jury be satisfied beyond a reasonable doubt that defendant killed Kauhane with malice aforethought and not in self defense, but the jury must also be satisfied beyond a reasonable doubt that the cause of death was the cut inflicted by the defendant, and this cut must have been the immediate and not the remote cause of death.

" 16th. The uncontradicted evidence is that the wound was not necessarily mortal, but that on the other hand, was a wound most unlikely to cause death. It is therefore necessary for you to trace with more than ordinary care the cause of death. It is not sufficient that you cannot discover the cause of death. You must be satisfied beyond a reasonable doubt that death resulted in consequence of the wound inflicted by the defendant or you must acquit.

" 17th. A man is only answerable for the natural and probable results of his acts; therefore, if you find that Kauhane's death was not naturally and probably the result of defendant's acts, you must acquit.

" 18th. The prosecution must prove that the cut Kauhane received was intentionally inflicted by the defendant and not the result of accident. Unless this has been satisfactorily proved to you beyond any reasonable doubt, you must acquit.

" 19th. You must eliminate all reference of whatever assault defendant may have made on Kaouli, as defendant is not on trial for that assault; he is answerable for that in another manner, except so far as it is evidence of the circumstances under which the act was done.

" 20th. If there is a reasonable doubt, supported by the evidence, which is consistent with the defendant's innocence, either as to the cause of Kauhane's death or as to whether

the killing was excusable or justifiable, or on any other ground, you must acquit.

" Gentlemen, I now leave the case in your hands."

The following instructions were refused :

" 6th.   You must be satisfied that defendant formed the design to kill Kauhane and not any person in general before you can convict him of murder in the 2nd degree.

" 7th.   You cannot consider what defendant intended to do, you cannot assume that he came ashore armed with a knife to kill, if necessary, anyone interfering with or attempting to arrest him, this would oblige him to prove affirmatively that he did not intend to kill or injure any one.   The law does not throw this burden upon the defendant.   What he actually did affords no guide in determining what he would have done had the officers disclosed their official character and their mission.

" 8th.   If the defendant had the knife in his possession as he says to take home, this is what he, or any other private citizen, has a right to do, but it is entirely immaterial whether he had the knife in his possession or not, so long as he used it only to repel an attack, he had the right to resist to any extent to protect himself from assault.

" 10th.   Even though defendant was in the act of committing an offense, if the acts of the officers could have led him honestly to believe that his life was in danger, he was justified in using the knife to defend himself as he is alleged to have done.

" The danger may not have been real ; it may have been only apparent.   And this apparent danger was to be judged of by the defendant.

" 11th.   The officers, by not declaring that they were such, and by not giving the defendant clearly to understand for what cause they undertook to make the arrest, acted unlawfully, and defendant was justified in resisting, and if the officers pressed defendant so hard as to make it necessary to choose between submission and killing, and under such

circumstances defendant did inflict the wound of which Kauhane died, you must acquit.

"12th. Not only is it essential to the rights of the citizen that he shall be required to submit only when the official character of the demand is made known to him, but it is essential to the dignity of the government that its servants shall be sheltered by their official prerogatives only when they are acting legally and give notice that they so act.

"13th. The testimony is uncontradicted that no word was spoken to indicate that the officers or either of them were policemen, or that they were in the act of arresting defendant, nor is there any evidence bringing home to defendant in any way a knowledge that they were policemen, therefore defendant is in the same position and had the right to resist to the same extent as though he had been attacked by any private citizen, and unless you find that he used excessive force, you must acquit.

"14th. The prosecution must not only show that the injury was the probable cause of the death, but that it was the efficient and immediate cause of the death, and the evidence must establish this fact beyond a reasonable doubt. If this has not been done, you must acquit."

We consider and hold that there is no error in the charge of the court, nor in the refusal to give the instructions asked for.

The only observation we deem proper to make here is that the law as laid down by the court was favorable to the defendant, and that instructions that are not pertinent to the facts of the case need not be given.

Exception was made (we presume in the form of a motion to quash the panel, though no such motion is on file) as follows:

2d. That thereafter, to wit, on the 16th day of said May, the said cause came on for hearing in the said court and a jury was empanelled to try the same, which jury was selected from the list of jurors that had been drawn by the First Judge of the Circuit Court of the First Circuit, namely,

W. A. Whiting, with Geo. Lucas, who was at the time of the drawing of said list of jurors a deputy clerk of the Judiciary Department, and that the said list was not drawn by said Judge and with Henry Smith, Esq., who was at the time of making up said list, clerk of the Judiciary Department.

Our answer to this is that Mr. Geo. Lucas is a clerk of the Circuit Court, First Circuit, and as such had the authority with Judge Whiting (Secs. 59 and 82 Judiciary Act) to draw the jury.

The third exception is:

3d. That upon the examination of the jurors drawn to try the said cause upon their *voir dire*, one J. Lucas, who had been drawn as such juror, was examined and testified (indicating some previous knowledge of the case.)

Upon the authority of the *Queen vs. Leong Man*, 8 Haw. 389, and it appearing that the juror J. Lucas was not challenged peremptorily though none of the challenges allowed to defendant had been made, the exception to the overruling of the objection to the juror avails nothing to defendant.

The remaining exception to the introduction of evidence is as follows:

4th. Counsel for the defendant objected to the question to the witness Herman Kaouli in his examination in chief on behalf of the prosecution: "State to the court and jury how you came to be there." Objecting to any evidence tending to show that the defendant had opium or was about to smuggle opium into the country as being irrelevant and inadmissible.

The court: "The possession of opium and the smuggling of opium are both unlawful and are punishable by the laws of this country, Mr. Magoon, and I think everything is competent to show and should be admitted, tending to show why this witness acted as he did on that night. Perhaps the present question is premature, but if this witness shall testify that he made an attempt to arrest this man, he then may be asked how he came to do so, and in testifying he can testify

to everything that was told him, or information which led him to act as he did. I shall overrule your objection."

Mr. Magoon : Exception.

5th. The defendant's counsel objected to the question to said Kaouli upon his examination in chief : "Up to the time of this arrest of the defendant was Kauhane to all appearances in his usual health ?" on the ground that the witness is not an expert.

The Court : I think the witness could be asked what his apparent condition was, not to testify as an expert, but what was his apparent condition.

Mr. Magoon : I will note an exception.

Defendant's counsel objected to the question to said Kaouli in his examination in chief : "State distinctly why didn't you tell him ?" (that they were officers), on the ground that it makes no difference what reason they had in their own minds for not telling the defendant, it being obligatory upon them to tell the defendant that they were officers.

The Court : "I think, Mr. Magoon, as a matter of evidence it should be allowed. After the evidence is all in, I will then state to the jury what the law is as to whether they are justified in making the arrest or not, but at this stage of the trial I think the question is pertinent."

Mr. Magoon : Exception.

6th. That defendant's counsel objected to the question on redirect examination of John Hale : "Do you know when Kauhane was cut ?" on the ground that the witness has already stated he did know when Kauhane was cut and he saw him cut.

Objection overruled. Exception.

7th. Defendant's counsel objected to the question put to the witness, B. P. Zablan : "Have you seen that label on the opium before ?"

Mr. Magoon : "I made an objection at the beginning of the case with reference to evidence being introduced to show that the defendant had opium in his possession. The court allowed it to be introduced as part of the *res gesta.* I claim

now, may it please the court, the officers not having complied with the law in making the arrest, that any attempt to show that the defendant was violating the law is wholly immaterial. The officers cannot justify themselves in arresting this man illegally, or justify themselves in attempting to make an arrest at all in this case without having first complied with the law, and I submit that any evidence tending to show that this defendant had anything on his person in the nature of opium or which would make him an offender against the law is wholly irrelevant and immaterial as far as this case is concerned, and I move, the court please, to have all the evidence with reference to the opium or attaching this defendant with the possession of opium, stricken out.

Objection overruled.   Motion denied.   Exception.

We find no cause for sustaining these exceptions and they are overruled.

A further ground for the motion for a new trial is :

8th.   That the jury drawn to try the said cause was not kept in confinement after they were sworn in as jurors, but were allowed to go to their homes upon each adjournment of the court and while the trial of said cause was in progress and not ended.   That the occasions upon which the jurors were allowed thus to separate were as follows, namely, from 12:30 o'clock, p. m., Wednesday, May 16th, 1894, to 9:30 o'clock a. m., Thursday the 17th day of said May, and from 11:30 o'clock a. m. of the said 17th day of May to 12:30 o'clock p. m. of the said day.

We hold that the crime charged being not capital it was within the discretion of the presiding judge to allow the jury to separate and we do not review his discretion.

We therefore overrule all the exceptions taken and the motion for a new trial, and it is so ordered.

   *G. K. Wilder, Deputy Attorney-General,* for prosecution. .
   *J. A. Magoon* and *V. V. Ashford,* for defendant.