THE COUNTY OF HAWAII AT THE RELATION AND TO THE USE OF ANNIE SANTANA *v.* HENRY K. MARTIN AND UNITED STATES FIDELITY AND GUARANTY COMPANY.

No. 2208.

SUBMITTED DECEMBER 2, 1935.        DECIDED FEBRUARY 4, 1936.

COKE, C. J., PETERS, J., AND CIRCUIT JUDGE CASE IN PLACE OF BANKS, J., UNABLE TO ATTEND ON ACCOUNT OF ILLNESS.

OPINION OF THE COURT BY COKE, C. J.

The plaintiff, the County of Hawaii at the relation and to the use of Annie Santana, brought an action in the circuit court of the fourth judicial circuit against Henry K. Martin and United States Fidelity and Guaranty Company for recovery upon the official statutory bond of Martin as sheriff of the County of Hawaii, the company being the surety on the sheriff's bond. The cause has reached this court on reservation of a question of law by the judge

of the court below. A statement of the case set out in the brief of counsel for defendants and acquiesced in by counsel for plaintiff is as follows: "The plaintiff's amended complaint alleges in substance that defendant Henry K. Martin was the duly appointed sheriff of the County of Hawaii, and that defendant United States Fidelity and Guaranty Company was the surety on the sheriff's bond. That on or about September 24, 1934, George K. Mills, a police officer appointed by the sheriff, 'acting by virtue and color of his office as such police officer, at Hilo, aforesaid, did maliciously, unlawfully and without reasonable or probable cause and without warrant or process from any court arrest the said relator, Annie Santana, upon the false, malicious and unfounded charge that she, the said relator, then had in her possession a watch which, as it was said, was the property of the relator's husband.' The complaint further alleges that the plaintiff was subjected to indecent treatment by police officer George K. Mills in the course of the arrest, and that she was taken by the said Mills to the police station, at Hilo, confined in the county jail for a period of three hours, during which time plaintiff was subjected to indecent search, all of which was alleged to have been done 'without reasonable and probable cause and for the purpose of harassing, annoying, oppressing and disgracing the said relator.' For the acts complained of the plaintiff demands damages against the sheriff and the surety on his bond in the sum of $10,000. Both defendants filed demurrers which challenge the amended complaint upon the following grounds: (1) That the facts alleged in said amended complaint are insufficient to state a cause of action. (2) That neither the sheriff, nor his surety, is liable for the alleged misconduct of a police officer. (3) That neither the sheriff, nor his surety, is liable for the alleged wrongful acts committed by police officers without a warrant of arrest and

without probable cause. (4) That plaintiff cannot bring this action in the name of the County of Hawaii. Upon the request of counsel for plaintiff and the defendants, the court below has reserved to this court, for its determination, the following question: 'Should the demurrers be sustained upon any of the grounds therein stated?' "

It affirmatively appears from the record that Mills was a police officer appointed by defendant Martin, sheriff of the County of Hawaii. There is, however, an absence of any allegations in the amended complaint to the effect that the sheriff either participated in or authorized or was aware of the torts alleged to have been committed by Mills or that he subsequently ratified them, as well as the absence of any averments that the sheriff was negligent or in any way at fault in failing to exercise proper care and prudence in the selection or supervision of his police officers. While the demurrer challenges the sufficiency of the amended complaint on other grounds the absence of the averments just referred to constitutes the deciding factor involved in this appeal.

It is a rule of long standing that a sheriff, while responsible for the acts of his deputies because they are in his private service and act in his name and stead, is not liable for the torts of policemen, although appointed by him, because they are servants of the government unless the sheriff has been negligent in their selection or has directed or ratified their wrongful acts or has personally co-operated therein. Owing to the present-day duties of deputy sheriffs this distinction may appear obsolete but in the absence of legislative abolishment we are constrained to recognize it. The rule which recognizes the distinction between the liability of a sheriff for the wrongful acts of his deputies on the one hand and his nonliability for the wrongful acts of his police officers on the other is

clearly expressed in *Michel* v. *Smith*, 205 Pac. 113, 114, where the supreme court of California says: "There is a well-defined exception to the general rule which renders one responsible in a civil action for the tortious acts of those employed by or under him. A public officer is not responsible for the acts or omissions of subordinates properly employed by or under him, if such subordinates are not in his private service, but are themselves servants of the government, unless he has directed such acts to be done, or has personally co-operated therein. 23 Am. & Eng. Ency. of Law, 382; Story on Agency, 319; Robertson v. Sichel, 127 U.S. 507-515, 8 Sup. Ct. 1286, 32 L. Ed. 203. See, also, note to 12 Ann. Cas. 184. In opposition to this principle of law we are cited to those instances in which a sheriff has been held responsible for the acts of his deputies, but the respondent loses sight of the distinction between the two situations, which is recognized in the decisions. A sheriff is responsible for the acts of his deputies, for they are acting in his private service and in his name and stead, and are only public officers through him. The deputy is not the agent or servant of the sheriff, but is his representative, and the sheriff is liable for his acts as if they had been done by himself. Foley v. Martin, 142 Cal. 256-260, 71 Pac. 165, 75 Pac. 842, 100 Am. St. Rep. 123. A different rule prevails in the case of the chief of a municipal police department. He may even be charged with the duty of selecting the members of the force, but he is not responsible for their acts, unless he has directed such acts to be done, or has personally co-operated in the offense, for each policeman is, like himself, a public servant. Casey v. Scott, 82 Ark. 362, 101 S. W. 1152, 118 Am. St. Rep. 80, 12 Ann. Cas. 184. The question was squarely presented and considered in this last case. An ordinance of the city of Texarkana provided for a dog tax and the manner of collecting the same. It contained a provision

that the chief of police of the city should employ a dog catcher whose duty it should be to enforce the ordinance. The action was one brought against the chief of police, the dog catcher appointed by him, and the city for the negligence of the dog catcher. On an appeal by the chief of police from a verdict directed against him and the dog catcher, the court said that, in so far as the relation of the appellant to the action was concerned, the dog catcher was a public servant selected by the chief of police, just as a patrolman would be selected by him or a mayor, or other appointing power, and held 'there is no liability in such case, unless the appointing officer fails to exercise reasonable care in the selection of the appointee, a question not presented.' "

In *Casey* v. *Scott, supra,* the doctrine of the non-liability of a sheriff for the acts of a police officer are stated in the following language: "A sheriff is responsible for his deputies, for they are acting in his private service in his name and stead, and are only public officers through him. The chief of police may select a police force, but he is not responsible for their acts, as each policeman is a public servant himself. So under this ordinance, the dog catcher was a public servant selected by the chief of police just as a patrolman would be selected by him, or a mayor or other appointing power."

The Hawaiian decisions having any direct bearing upon the questions here involved are confined to *Hang Lung Kee & Co.* v. *Bickerton and Parke,* 4 Haw. 584; and *Kanamu* v. *Wilson,* 8 Haw. 385. In the *Hang Lung Kee* case Chief Justice Judd, while presiding *nisi,* observed that while constables were under the control of the marshal they were not appointed by him and that it would be an anomaly to hold an officer responsible for the acts of an under officer in the same department whom he did not appoint. This, we think, fell far short of indicating that

the chief justice deemed the converse to be true, namely, that an official is personally liable in damages for the misfeasance or wrongs, or negligence of duty of all subordinates appointed by him.

The case of *Kanamu* v. *Wilson* involved an action against the marshal for false imprisonment. The plaintiff was placed under arrest and detained by a police officer. A jury found in favor of plaintiff. The trial court set aside the verdict and granted a new trial. On appeal this court said: "The question is, was there an arrest and detention by order of defendant, the marshal? If an arrest was made without the order or direction of the defendant, he cannot be held liable for the same. The marshal is not liable for the acts of police officers; he is only liable for the acts of his deputies. * * * To warrant a verdict for plaintiff, the jury would have to find that defendant ordered the arrest of the plaintiff, or if he did not order it, then that after the arrest (if there was one) he ratified it." It is true there is a distinction between the *Kanamu* v. *Wilson* case and the one at bar lying in the fact that the marshal of the Kingdom did not appoint police officers, whereas under the present law the sheriff exercises that authority, but in our opinion this distinction does not alter the rule and expose the sheriff to liability.

During the Monarchy (see §§ 8 and 11, Ch. 8, L. 1888), the marshal of the Kingdom was by statute made liable for the acts of his deputies. This same provision has been preserved through the succeeding years and at the present time the high sheriff is responsible for the official acts of his deputies. (See § 517, R. L. 1935.) No corresponding statute affecting county sheriffs exists and furthermore it is clear Mills was not a deputy of the sheriff.

When county government came into being in the Territory the power of appointment of deputy sheriffs as well as police officers was reposed in the several county sheriffs and this authority still exists. The sheriff's appointments do not require confirmation or approval by either the high sheriff or the attorney general. (See *Moir* v. *Knell,* 17 Haw. 135; *Territory* v. *Wills,* 25 Haw. 747.) Sections 2842-2849, inclusive, R. L. 1935, are declaratory of the powers and liabilities of the several county sheriffs in the Territory and their deputies but there is nothing in our local statutes which exposed the several county sheriffs to liability for the torts of police officers.

Doubtless from the facts alleged Mills is liable in damages to plaintiff for the torts committed by him but to hold the sheriff liable would establish a precedent which, as indicated in *Robertson* v. *Sichel,* 127 U. S. 507, would tend to paralyze the public service and render it difficult, if not impossible, to secure competent and responsible persons willing to assume the hazards and risks to which the office of sheriff would be constantly exposed. In the absence of any controlling statute we must be guided by the common law, the rule of which is that a sheriff is not liable for the torts of policemen under the circumstances alleged in plaintiff's complaint. For this reason the amended complaint does not state a cause of action and defendants' demurrer should be sustained.

Defendants advanced the further argument that the declaration is bad because it appears therefrom that the acts complained of were done maliciously and without reasonable or probable cause and therefore Mills could not have been acting in his official capacity nor under color of his office. The same argument was made before the supreme court of Idaho in the recent case of *Helgeson* v. *Powell,* 34 Pac. (2d) 957. The court in answer said that the trend of modern decisions and the great weight

of authority hold contrary to the rule. In *Abbott* v. *Cooper,* 23 Pac. (2d) 1027, the supreme court of California disposed of the same contention in the following language: "We cannot subscribe to this doctrine, as it would tend to excuse or mitigate the wrongful acts of the officer if said acts were accompanied by unusual acts of oppression or amounted to a flagrant abuse of official duty, and penalize the offender only when his acts were less culpable." In *Jahns* v. *Clark,* 244 Pac. 729, 731, the supreme court of Washington employed even more emphatic language, that tribunal saying: "Courts long ago, however, have ceased to view with much tolerance this distinction when liability for unwarranted acts on the part of peace officers is attempted to be evaded by their superior and his sureties, for, as has often been pointed out, if this distinction is carried to its legitimate conclusion, there would never be any liability but his own for the wrongful act of a subordinate peace officer."

The final contention of the defendant is that the complaint is deficient because it contains no allegation that the County of Hawaii consented to the use of its name in this action. Annie Santana instituted her action in the name of the County of Hawaii at her relation and to her use. This was made necessary because the official bond of the sheriff ran to the County of Hawaii as obligee. The sheriff and his surety bound themselves to the County of Hawaii under a penalty of $10,000 for the faithful performance by the former of "all duties of his office, appointment, position or employment which are now or may hereafter be required, prescribed or defined, by law" and that the conditions of the bond "may be enforced in any manner or by any proceedings authorized by law." This, therefore, is the common case of a party entitled to the beneficial results of a suit which at law must be prosecuted in the name of a third party. Annie Santana,

claiming as she does to have been injured by virtue of a breach of the contract, could legally and without the consent or authority of the county institute and maintain in the name of the latter an action for the recovery of such damages as she may have suffered. The contract of indemnity as required by statute was largely for the benefit of the public. If, therefore, an aggrieved party may not prosecute an action for the breach of the contract in the name of the obligee, or if the consent of the obligee is a prerequisite to such prosecution and the obligee elects to withhold consent, the official bond of a sheriff would afford slight, if any, protection to the public. The rights of a beneficial owner to bring an action to his use in the name of the legal owner is fully treated in 47 C. J., pp. 25-30. See also *State* v. *Moore,* 19 Mo. 369; *Richardson* v. *Trail,* 101 S. E. 732; *Robinson* v. *Sheehan,* 173 Ill. App. 464; *Scott* v. *Feilschmidt,* 182 N. W. 382.

Our conclusions are that the demurrers to the amended complaint should be sustained on the first and second grounds contained therein and the reserved question is answered accordingly.

*Irwin & Harlocker* for plaintiff.

*Carlsmith & Carlsmith* and *Robertson° & Castle* for defendants.