# ROBERTSON *v.* SICHEL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 269. Argued and Submitted May 1, 1888. — Decided May. 14, 1888.

A collector of customs is not personally liable for a tort committed by his subordinates, in negligently keeping the trunk of an arriving passenger on a pier, instead of sending it to the public store, so that it was destroyed by fire: where there is no evidence to connect the collector personally with the wrong, or that the subordinates were not competent, or were not properly selected for their positions.

THIS was an action at law, brought in the city court of the city of New York, by Emilie Sichel, an infant, by Joseph Sichel, her guardian *ad litem*, against William H. Robertson, collector of customs for the port and collection district of New York, and removed by the defendant into the Circuit Court of the United States for the Southern District of New York.

. The object of the suit was to recover damages for the loss of the contents of a trunk belonging to the plaintiff, who was a passenger by the steamship Egypt of the Inman line, from Liverpool, and arrived at New York, at the pier of the ship, on the 31st of January, 1883. She was sixteen years of age, and was a first-cabin passenger. She made a baggage declaration, under oath, which stated that she had two trunks and two bags, containing " wearing apparel in actual use and personal effects not merchandise." She declared " nothing new or dutiable." Her baggage was examined on the dock, and one trunk was detained by the customs officers, who gave her a receipt therefor, signed by an inspector, which stated that the inspector had sent the one trunk, for appraisement, to the public store, under a baggage permit. She was directed by the officers to call, the next day, at the public store to receive the trunk. This trunk contained her personal effects, which cost her $400. The only thing in the trunk not wholly intended for her own use was ten pounds of chocolate, valued at about $2.50, part of which she ate, and she intended to eat the balance in company with some of her young friends. This was her first visit to America. She was a native of Germany, and at the time of her arrival was unfamiliar with our language and customs. She did not know and could not understand the nature and effect of the baggage declaration which she was asked to sign, and it was not explained to her. In the trunk, with her clothing and wearing apparel, were some paper boxes containing some brass ornamental jewelry on cards, given to her abroad, of the value in all of about one dollar, some of which she had worn, some old lace curtains, six table-cloths and twelve napkins, a gift from her mother, the ten pounds of chocolate, and three corsets, one of which she had worn. On the next day, the

usual order was made, on an application signed by the plaintiff, for an appraisement of the contents of the trunk. The plaintiff demanded the trunk at the public store, but did not receive it, because it had been destroyed by fire, on the pier of the ship, on the night of January 31, 1883. It was proved on the trial that, on the morning after the arrival of the ship, the deputy collector issued an order to the clerk in the collector's department at the custom house for the appraisal of the trunk, and that there could be no appraisal without a permit from the collector.

At the close of the plaintiff's case, the defendant asked the court to direct a verdict for him, on the ground that, the action being one for personal negligence, the plaintiff had not brought home to the collector personally any connection with the trunk at the time it was destroyed, and that, if any negligence was to be imputed to the subordinate officers of the customs, such negligence could not be imputed to the collector. The court refused to grant the motion, and the defendant excepted.

Evidence was then introduced on the part of the defendant tending to show that the inspector on the dock who examined the trunk discovered what, in the exercise of his discretion, he determined to be dutiable articles; that he reported to his superior officer that he thought the trunk contained dutiable articles and that officer told him to see what else he could find; that he found other dutiable articles; that he attempted to find an appraiser to appraise and assess duties upon those articles, but did not find one; that he reported to the staff officer having charge of the passengers and their baggage from that steamer, and under his advice marked the trunk for the public store, to be examined by the proper examiner and have the duties assessed, under a section of the regulations for the government of officers of the customs under the superintendence and direction of the surveyor of the port of New York, which was admitted in evidence, and was as follows: "In the absence of the entry clerks or appraiser, dutiable articles taken from passengers' baggage will be sent by the inspector as soon as possible to the public store, and the pas-

senger will be furnished by the inspector with the usual baggage certificate;" that, the trunk having been thus marked for the public store, and a receipt given to the plaintiff, it was put into the charge of the discharging officers of the vessel; that the inspectors were allowed to send goods to the public store for appraisement, only through a custom-house cartman; that the discharging officer who received the plaintiff's trunk did not send it to the storehouse, because there was no cartman on the pier to take it away, and none came to do so, though an effort was made to procure one; that the trunk remained on the pier, under his custody, and was totally consumed by fire on the night of the 31st of January, the officers who were there being driven away by the flames; and that the fire occurred between 2 and 3 o'clock A.M. of the day following that of the arrival of the steamer.

It also appeared in evidence that, under article 431 of the customs regulations, it was the duty of the collector, on the arrival of any steamer of a regular line from a foreign port, to detail an experienced entry clerk, who, with a similar clerk to be designated by the naval officer and an assistant appraiser or examiner to be detailed by the appraiser, should, together with the inspector on board, examine all the passengers' baggage, place the dutiable value upon the same, and, if dutiable articles were found, appraise the same and assess the duty thereon. It also appeared that all those officers were on the dock on that day.

The following regulations were then put in evidence:

"The Laws and Regulations for the Government of Officers of Customs under the superintendence of Surveyors of Ports. 1877."

"Article 104. Whenever any trunk or package brought by a passenger as baggage contains articles subject to duty and the value thereof exceeds $500, or if the quantity or variety of the dutiable articles is such that a proper examination, classification, or appraisement thereof cannot be made at the vessel, the trunk or package will be sent to the public store for appraisement."

"Article 117. In the absence of the entry clerk or ap-

praiser, dutiable articles taken from passengers' baggage will
be sent by the inspector, as soon as possible, to the appraiser's
store and the passenger will be furnished by the inspector
with the usual ' baggage certificate,' which will be in the fol-
lowing form :

*" Inspector's certificate of goods sent to public store under
baggage permit.*

"PORT OF ——, —— —, 18—,

*On board ship.*

" I have sent to public store under ' baggage permit' the
following articles said to belong to ——.

" (Describe the articles.)             —— ——,

*Inspector.*"

By the government's report in this case the value of the
property in Miss Sichel's trunk was alleged to be $100 only,
while the plaintiff did not claim the value to be over $400.
Peterson, the government inspector, did not make a written
report of the case to the government until about two months
after the arrival of the steamer. He did this at the request
of the surveyor, and it was no part of his duty to make it as
requested. The same inspector Peterson had signed and issued
the certificate on the baggage declaration. There was an
appraiser on the pier in question some time on that day. The
trunk in question was the only seizure or detention of pas-
sengers' baggage made on that dock on the day in question.

The defendant himself being put upon the stand and duly
sworn, testified that he was the collector of the port of New
York; that he had in the neighborhood of twelve hundred
subordinates under him; that, approximately, the average
annual importations into the port of New York, passed
through the custom house, were of the value of five hundred
millions of dollars; that he knew nothing about the trunk
imported by Emilie Sichel by the Egypt on January 31st, at
the time of its importation ; that he was not on the dock at
the time ; that it was no part of his duty to pay any atten-
tion to the actual arrival of the passengers' baggage, or pass-

ing it through the custom house, or ordering it to the public store, or examining it to see if there were any dutiable goods, or to have anything to do with it; that, as a matter of fact, he had nothing to do with it; and that the first time his attention was called to the matter of this trunk was long after the fire, some time in September, 1883.

The evidence being closed, the defendant moved the court to direct a verdict in his favor upon the same grounds on which the motion was made at the close of the plaintiff's case, that is to say, that there was no evidence in the case to connect the defendant with the destruction of the trunk; that in the case of a public officer, the doctrine of law *respondeat superior* did not apply; and that, before there could be any recovery from the public officer it must be shown that he was personally responsible himself, and that the negligence was his own act. The court refused to grant this motion, and the defendant excepted.

The defendant then requested the court to charge as follows:

"1. That a public officer is not responsible for the negligence of his subordinates.

"2. That the defendant is liable only for the neglect of some duty devolved upon him personally and not for the neglect of duty of any other person.

"3. That unless the jury find that the loss of this trunk was the direct result of some personal carelessness or negligence on the part of the defendant there can be no recovery.

"4. That it is not sufficient to show that the loss may have been the result of negligence on the part of the collector. It is necessary to show that it was.

"5. That the jury cannot find a verdict in favor of the plaintiff if they find that the loss of this trunk was due to the personal negligence or violation of statutes or regulations on the part of the customs officers other than the defendant personally.

"6. That the inspector who examined plaintiff's trunk, having found therein what he believed to be dutiable articles, was obliged to turn said trunk over to others of the officers of the customs for appraisement and assessment of duty, and

until such appraisement and assessment of duty and the payment of the duty as assessed the plaintiff was not entitled to the possession of the trunk.

" 7. That the defendant is not responsible in this action for the withholding the plaintiff's trunk and its contents.

" 8. That if the customs officials at the vessel misinterpreted their duty, and did an act which was in law a trespass or conversion, the defendant is not responsible, he not having been present and not having been a party to the wrong interpretation of duty acted on by the customs officers at the vessel.

" 9. That the defendant is not responsible for the trespasses, conversion, or other faults of his subordinates committed by them even in the line of their duty, unless he was personally a party to the same.

" 10. That the law, as provided in § 2652 of the Revised Statutes, made it the duty of the customs officers at the vessel by which the plaintiff's trunk was imported, to execute and carry into effect all instructions of the Secretary of the Treasury relative to the execution of the laws.

" 11. That it appears by the evidence in this case that one of the instructions by the Secretary for the guidance of the officers at the vessel in which the plaintiff's trunk came was a provision that, whenever any trunk or package brought by a passenger as baggage contains articles subject to duty, the value whereof exceeds five hundred dollars, or, if the quantity or variety of dutiable articles is such that the proper classification and examination for appraisement thereof cannot be made, the trunk or package will be sent to the public store for appraisement.

" 12. That this instruction of the Secretary had and has the force of law for the facts in this case.

" 13. That the instructions devolved upon the customs officials at the vessel a discretion to determine whether the quantity and variety of the dutiable articles was such that the proper classification and examination for appraisement thereof could not be made at the vessel, and, if they determined it could not be, to send the trunk and its contents to the public store for appraisement.

" 14. That in the exercise of this discretion those officers, and the collector as their superior, are not responsible for any error of judgment in making the determination whether the quantity or variety of the dutiable articles was such, prior to sending the trunk to the public store.

" 15. That the officers at the vessel, and the collector as their superior, can, if at all, only be held responsible for bad faith in the exercise of the discretion thus devolved upon them by the regulation established by the Secretary, under the law."

The court charged the jury, that if one of the subordinate officers of the customs, in the course of the performance of his duty, did an absolute wrong to the plaintiff, such as to take her trunk from her and keep it from her when she wanted it and was by law entitled to it, the defendant would be liable. The defendant excepted to this charge. The court gave further instructions, which bore upon the matters set forth in the defendant's request to charge, but which, in the view we take of the case, it is not important to notice. The bill of exceptions states, that the court did not comply with the defendant's requests to charge further than as appears by the charge as stated, and that the defendant excepted to the refusal to charge as to each request separately, so far as the court did refuse.

The jury found a verdict for the plaintiff for $459. The court ordered that a certificate of probable cause be entered, and on the verdict, with costs added, a judgment was entered for the plaintiff for $502.96, to review which the defendant brought a writ of error.

*Mr. Solicitor General* for plaintiff in error.

*Mr. Edward Jacobs* for defendant in error..

MR. JUSTICE BLATCHFORD, after stating the case as above reported, delivered the opinion of the court.

We are of opinion that there was error in the charge of the court, and that the defendant was not liable for the wrong, if any, committed by his subordinates, on the facts of this case.

There is nothing in the evidence to connect the defendant personally with any such wrong. No evidence was given that the officers in question were not competent, or were not properly selected for their respective positions. The subordinate who was guilty of the wrong, if any, would undoubtedly be liable personally for the tort, but to permit a recovery against the collector, on the facts of this case, would be to establish a principle which would paralyze the public service. Competent persons could not be found to fill positions of the kind, if they knew they would be held liable for all the torts and wrongs committed by a large body of subordinates, in the discharge of duties which it would be utterly impossible for the superior officer to discharge in person.

This principle is well established by authority. It is not affected by the fact that a statutory action is given to an importer, to recover back, in certain cases, an excess of duties paid under protest; nor by the fact that a superior officer may be held liable for unlawful fees exacted by his subordinate, where lawful fees are prescribed by statute, and where such fees are given by law to the superior, or for the act of a deputy performed in the ordinary line of his official duty as prescribed by law. The government itself is not responsible for the misfeasances, or wrongs, or negligences, or omissions of duty of the subordinate officers or agents employed in the public service; for it does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs; since that would involve it, in all its operations, in endless embarrassments, and difficulties, and losses, which would be subversive of the public interests. Story on Agency, § 319; *Seymour* v. *Van Slyck*, 8 Wend. 403, 422; *United States* v. *Kirkpatrick*, 9 Wheat. 720, 735; *Gibbons* v. *United States*, 8 Wall. 269; *Whiteside* v. *United States*, 93 U. S. 247, 257; *Hart* v. *United States*, 95 U. S. 316, 318; *Moffat* v. *United States*, 112 U. S. 24, 31; *Schmalz's Case*, 4 C. Cl. 142.

The head of a department, or other superior functionary, is not in a different position. A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the sub-

agents or servants or other persons properly employed by or under him, in the discharge of his official duties.   Story on Agency, § 319.

In *Keenan* v. *Southworth*, 110 Mass. 474, it was held, that a postmaster was not liable for the loss of a letter, occasioned by the negligence or wrongful conduct of his clerk.   The court said: "The law is well settled, in England and America, that the postmaster general, the deputy postmasters, and their assistants and clerks, appointed and sworn as required by law, are public officers, each of whom is responsible for his own negligence only, and not for that of any of the others, although selected by him and subject to his orders."   The court cited, to sustain this view, *Lane* v. *Cotton*, 1 Ld. Raym. 646; *S. C.* 12 Mod. 472; *Whitfield* v. *Le Despencer*, Cowp. 754; *Dunlop* v. *Munroe*, 7 Cranch, 242; *Schroyer* v. *Lynch*, 8 Watts, 453; *Bishop* v. *Williamson*, 2 Fairf. (Maine), 495; *Hutchins* v. *Brackett*, 2 Foster (22 N. H.), 252.

To the same purport are *Bailey* v. *The Mayor*, 3 Hill, 531; *Conwell* v. *Voorhees*, 13 Ohio, 523, 543; Story on Bailments, §§ 462, 463; 1 Bell Com. 468, 5th ed.; 2 Kent Com., 4th ed., 610, 611.

The very question here involved came before the Circuit Court of the United States for the Southern District of New York, in the case of *Brissac* v. *Lawrence*, 2 Blatchford, 121, in June, 1850.   The defendant was the collector of the port of New York.   Imported goods belonging to the plaintiff had been deposited in a custom-house warehouse, and were either lost or mislaid there, or were delivered to some person not entitled to them.   At the trial it was sought to show carelessness on the part of the defendant, as the head of the custom-house department, in the manner in which the books of the warehouse were kept, and also that the book-keeper was a person of intemperate habits and unfit for the situation.   On the other hand, it was proved that the books were kept in conformity with the mode usually adopted at the time for keeping books of that kind; that the intemperate book-keeper had been discharged; and that, during a period of nineteen months, out of two hundred thousand packages of goods which had

been received at the warehouse in question, only two packages had been lost. Mr. Justice Nelson, in charging the jury, submitted to them the question whether the collector had been guilty of personal negligence in respect to the goods. In the course of the charge, the court said: "The collector is not personally responsible for the negligence of his subordinates in the custom-house department, and, therefore, he is not responsible for the negligence of persons employed in the warehouse department. . . . In order to charge the defendant with the loss, it is necessary that the plaintiffs should satisfy you, by affirmative and responsible testimony, that the collector was personally guilty of negligence in the discharge of his duty, either by misdeed or by omission. . . . This is a suit against the collector, who did not have charge of the goods; and, in order to render him liable, you must find him to have been guilty of personal neglect, misfeasance, or wrong. . . . In view of the fact that the collector of New York has charge of all the business from which two-thirds of the entire revenue of the United States is collected, and has thousands of subordinates, and upon the evidence that only one package out of every one hundred thousand which passed through the hands of those subordinates has been lost, it is strange that this case has been so urgently pressed, with the idea that, upon any principle of equity, much less of law, there could be any liability on the part of the collector." The jury found a verdict for the defendant. (See, also, *United States* v. *Brodhead*, 3 Law Reporter, 95; Wharton on Agency, § 550.)

*The judgment of the Circuit Court is reversed, and the case is remanded to that court with a direction to grant a new trial.*