RUBENS *v.* ROBERTSON.

*(Circuit Court, S. D. New York.  February 20, 1889.)*

1. OFFICE AND OFFICER—REVIEW OF CONDUCT.
    Where a statute confers discretion on a public officer, which is exercised by him in good faith, the courts cannot review his action, though based on false reports made by negligent subordinates.
2. CUSTOM DUTIES—COLLECTOR—LIABILITY.
    The collector of customs is not responsible in damages for negligent acts on the part of his subordinates, in the absence of proof that such subordinates were known by him to be careless or incompetent, or were selected by him without proper care.  Following *Robertson* v. *Sichel,* 127 U. S. 507, 8 Sup. Ct. Rep. 1286.
3. SAME—TROVER—CASE.
    A collector of customs who sells unclaimed goods in pursuance of section 2976 of the Revised Statutes, in the belief that they are deteriorating in value, is not liable in trover, or in an action on the case for negligence, even though it appears that there was no substantial deterioration, if he acted in good faith, and was not personally guilty of negligence.
4. SAME.
    Where a statute authorizes the collector of the port to sell goods "upon due notice," and the clerk whose duty it was to give such notice failed to put up any notice whatever, the collector could not be held liable for his negligence in that regard, in the absence of proof of negligence on his part in the selection of the particular individual who was assigned to that duty.
5. SAME.
    The collector of the port cannot be charged with negligence in delegating to the appraiser the duty of examining merchandise, and reporting whether it is deteriorating in value within the meaning of section 2976 of the Revised Statutes.

At Law.  On motion for direction of verdict.

This was an action against a former collector of the port of New York to recover damages for the alleged conversion of plaintiff's goods.  In July, 1884, plaintiff imported from Marseilles 16 bales of hare-skins, which are by law free of duty.  Not having received his bill of lading, plaintiff did not enter his goods, and they were sent to bonded warehouse as unclaimed goods on general order.  In October of the same year the collector, having been informed by the owner of the warehouse that the goods were deteriorating, requested the appraiser to make an examination and report.  The appraiser reported that "the skins are in a

very bad condition; the pelts are nearly destroyed." The assistant appraiser, who made the report, admitted upon the trial that he had not personally examined the goods, and had seen only a small sample which had been brought him. Upon the receipt of this report the collector proceeded to sell the goods in pursuance of section 2976 of the Revised Statutes, and the regulations of the treasury department. The clerk in charge of the sale of unclaimed goods in the law division of the custom-house testified that he had posted a notice of the sale for not less than six days in a conspicuous place in the rotunda of the custom-house. The skins were sold on November 15th, at public auction, for $137.50. The purchaser resold them 21 days later for $1,017.21. Evidence was given on the trial to the effect that the bulk of the skins when sold were in good condition. It was admitted that the proceeds realized at the collector's sale were, after paying expenses, freight, and warehouse charges, paid into the treasury of the United States. It was also shown upon the trial that skins of this character were the subject of very frequent importation, that the pelts were comparatively worthless, and that almost their entire value was in the fur, which was used for making hats. On February 9, 1885, plaintiff went to the custom-house to enter his goods for consumption, when he for the first time learned of the sale.

*Horwitz & Hershfield*, for plaintiff.

*Stephen A. Walker*, U. S. Atty., and *W. Wickham Smith*, Asst. U. S. Atty., for defendant.

LACOMBE, J., (*orally.*) This is a case of the extremest hardship, and I am extremely loath to turn the plaintiff out of court, and refer him to congress for redress; but the case must be determined upon the rules of law as the court understands them. Much has been said here of the fact that no defense is presented by the collector. If this were in fact an action of trover, as in form it is; if the collector were the personal bailee of these goods; if it appeared that William H. Robertson, defendant here, had been intrusted with the goods by the plaintiff, and had failed to account for them when called for,—a conversion would be shown, and in an action of trover upon that showing, no defense being pleaded and sustained, the plaintiff would be entitled to recover. But, as I understand the theory of the law, William H. Robertson, defendant, personally and individually never had the custody of these goods. They were impounded by the federal government,—were put in its bonded warehouse,—and his only relationship to the goods was that he, under the laws enacted by congress, was the official custodian of them. Collectors, like all public officers, have to act by subordinates, and it is elementary law that they are not responsible for the negligence of such subordinates, but only for their own. If, after these goods went to the public store, they had been so placed in their particular storeage room as to be damaged by oil trickling upon them, or if a burglar had entered the public warehouse and made off with one of the bundles, or if the very bonded warehouseman himself, or the janitor, or whoever was the particular custodian there, had embezzled and decamped with them, surely

the collector would not have been personally responsible.    He would still be the official custodian; but, under the principle repeatedly laid down, he would not be liable for the negligence or default of his subordinate, unless he had himself employed an incompetent subordinate, knowing him to be incompetent, or unless, after he had knowledge of the fact that the subordinate employed by him was not fit to discharge his duties, he had failed to make the proper efforts to secure his removal, or unless some other personal negligence on his part were shown.    *Robertson* v. *Sichel*, 127 U. S. 507, 8 Sup. Ct. Rep. 1286.    In other words, there must be some personal negligence of a public officer shown before he can be held liable in an action for negligence.    And it is only as an action for negligence that, in my judgment, this suit could be maintained.    If the testimony made up a case of negligence, I should, before sending the case to the jury, entertain a motion to amend the complaint, and allow it to be cast into the form required in an action for damages for negligence. So that the mere form of pleading is immaterial; for the court will amend in furtherance of justice in any proper case where, as here, there is no surprise to the other side.

Applying these principles to the case in hand, treating it as an action for negligence, two classes of subordinates are to be considered, viz., those who acted before the collector formed the opinion referred to in section 2976, and those who acted subsequent to the formation of that opinion. With regard to the latter, if the collector employed in the law division of the custom-house a clerk whom he had every reason to suppose proper and competent to perform his duty, to take charge of the sale of unclaimed merchandise, and see that proper notices were put up, (and there is no evidence to show any negligence in the selection of the particular individual who was assigned·to that duty,) then for the failure of that individual on any particular occasion to put up any notice—for his negligence in that regard—the collector could not be held liable.

·The case reduces itself, then, to the single question whether the collector acted negligently in accepting the report made to him as to the condition of the goods.    That report was made by a subordinate whom he selected, and in the selection of whom no negligence can fairly be charged against the collector on this evidence, for he was the very same officer who was being employed constantly by the government and by the collector himself to appraise and value merchandise of all kinds and sorts that come to this port.    Having confided to that officer the duty of examining the goods and reporting upon their condition, he received his report, and acted upon it.    It is quite true, as plaintiff insists, that the only portion of the report which was fairly before the collector is the statement that the condition was bad; that the pelts were damaged,—if I get the exact words.    So far as the examiner or appraiser has gone on to give his individual opinion as to the application of the two sections, of course the report is entirely immaterial.    He did, however, report, as it appears here, that "the skins were in a very bad condition; the pelts were nearly destroyed;" and that "these goods are bought and sold by the dozen," etc.    Those statements are statements of fact, irrespective

of any opinion as to the application of the sections formed and reported by the appraiser.

The only question left in the case, then, is whether upon such a statement of fact, in connection with the other facts which it is claimed are shown in this case, and which it is claimed in this case are matter of common knowledge to the collector, he was warranted in forming the opinion that by reason of the prospective damage it was likely that the value of these goods would be insufficient to pay the storage on the same if they remained in the public store for the year. That is a question which calls for the exercise of the discretion which was expressly confided by statute to the collector. And in a case of that kind it would take something far stronger than has been proved here to induce the court to review the discretion which was thus exercised. I do not find, in any of the authorities which I have been able to look at overnight, (and I consulted a number which I do not refer to here,) any case where the court has gone to the length to which it is asked to go now in reviewing a discretion confided expressly to a public officer to act upon reported facts. For these reasons I am satisfied that, should I send this case to the jury, any verdict which the plaintiff might recover would be set aside when it reached the supreme court. Verdict directed for the defendant.