**Christina CHAO, Plaintiff,**

v.

**Moises BALLISTA, et al., Defendants.**

**C.A. No. 07cv10934–NG.**

United States District Court,
D. Massachusetts.

July 1, 2009.

Thomas J. Butters, Matthew D. Thompson, Butters Brazilian LLP, Stephen G. Dietrick, MA Department of Correction, Boston, MA, for Defendants.

George L. Garfinkle, Attorney at Law, Brookline, MA, Benjamin B. Weisbuch, Law Office of Benjamin Weisbuch, Newton, MA, for Plaintiff.

### *MEMORANDUM AND ORDER RE: MOTION TO DISMISS*

GERTNER, District Judge:

## I. *INTRODUCTION*

Plaintiff Christina Chao ("Chao") alleges that, as an inmate at South Middlesex Correctional Center ("SMCC"), she had 50 to 100 sexual encounters with Defendant Moises Ballista ("Ballista"), who was a guard at the prison, and that supervisory officials failed to protect her from what amounted to sexual abuse. The law presumes that a prisoner cannot consent to sexual relations with her keepers, and punishes such conduct criminally. *See* Mass. Gen. L. ch. 268, § 21A. While Ballista has been prosecuted for his actions, Chao now seeks to recover under 42 U.S.C. § 1983 for the supervisory officials' failure to properly investigate and prevent this abuse.

Defendants, who are or were various officials at the Massachusetts Department of Correction ("DOC"),[1] have filed this Mo-

---

1. The "DOC Defendants" include Kathleen Dennehey, Commissioner of the Massachu-

tion to Dismiss the instant complaint on a number of grounds, including the statute of limitations, the failure to adequately plead the personal involvement of supervisory officials, and qualified immunity. Separately, Chao has sought to amend her complaint to state claims against the Defendants in their individual capacities and to bring Carl Spencer, Former Director of Security for SMCC, into this action as a defendant.

While the statute of limitations question require factual clarification as described below, the Court concludes that, at a minimum, some portion of Chao's suit will survive this bar. Likewise, the Defendants' pleading arguments are rejected, notwithstanding the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, — U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The facts alleged are more than enough to raise the plausible inference that Defendants failed to adequately train, supervise, or investigate Ballista's yearlong sexual encounters with Chao. Finally, Defendants' argument that they are entitled to qualified immunity mainly because Chao denied a sexual relationship when questioned by officials is extraordinary. Plaintiff was a prisoner, after all, subject to the coercive dynamics frequently at play in these institutions; moreover, her environment was fully controlled by prison officials, who had a wide range of ways to monitor Chao's activities and investigate repeated rumors of sexual misconduct. The notion that Defendants' liability somehow begins and ends with her denials makes no sense. For the reasons stated below, the Defendants' Motion to Dismiss (document # 42) is **DENIED,** and Plaintiff's Motion to Amend (document

# 39) is **GRANTED** in part and **DENIED** in part.

## II. *MOTION TO DISMISS*

### A. Prison Litigation Reform Act

▉▉▉ As an initial matter, the Defendants argue that Chao, who was released from custody in 2004, is barred from bringing her suit by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. In particular, they suggest that Chao's failure to file a grievance, in keeping with prison administrative procedures, at the time of these sexual encounters is an obstacle to her Eighth Amendment claims. The Court finds this argument wholly unavailing. The PLRA was intended to discourage idle prisoners from filling the federal courts with frivolous lawsuits; thus, it prohibits actions "by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Act does not apply to *former* prisoners, who presumably have better things to do with their freedom than pursue meritless claims. *See Ahmed v. Dragovich*, 297 F.3d 201, 210 n. 10 (3d Cir.2002) (citing cases); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir.1999); *Torres Rios v. Pereira Castillo*, 545 F.Supp.2d 204, 206 (D.P.R.2007).

### B. Statute of Limitations

The Defendants also argue that this suit is barred by the three-year statute of limitations applicable to claims under 42 U.S.C. § 1983. *See Street v. Vose*, 936 F.2d 38, 39–40 (1st Cir.1991) (applying most closely analogous state statute of limitations to actions under Section 1983) (citing Mass. Gen. L. ch. 260, § 2A). Ballista began approaching Chao for sex in mid–2003, however the parties dispute whether

setts Department of Correction; Kelly Ryan, Superintendent of SMCC; Randy Azzato, Director of Security at SMCC; and Chris Tortora, Security Officer of SMCC.

these encounters ended in May 2004 or several months after that time. Because the instant suit was filed on May 16, 2007, the Defendants claim that all of the relevant events fall outside the three-year limitations period and therefore the case should be dismissed.

The Court must resolve, however, whether the Massachusetts "savings statute," Mass. Gen. L. ch. 260, § 32, applies to this action, which would bring Chao's claims within the statute of limitations. The savings statute provides one year for re-filing any suit dismissed "for any matter of form"—and that appears to be precisely what occurred in this case. *Id.* The instant suit was brought on the heels of an earlier complaint—filed August 3, 2006—which raised identical claims before Chief Judge Wolf. *See Chao v. Ballista et al.,* Case No. 06–cv–11351. That complaint was dismissed without prejudice on April 23, 2007, for insufficient service of process under Fed.R.Civ.P. 4(j)(2), because the Plaintiff had only made service on the Massachusetts Attorney General's office, not the Department of Correction. *See* Mass. R. Civ. P. 4(d)(3).

█ There is no question that the first complaint was timely filed. And because Section 1983 draws upon state law for its statute of limitations, a state savings statute like Mass. Gen. L. ch. 260, § 32 is applicable. *See Corliss v. City of Fall River,* 397 F.Supp.2d 260 (D.Mass.2005) (applying saving statute to § 1983 suit), cited approvingly in *Picciotto v. Continental Cas. Co.,* 512 F.3d 9, 19 (1st Cir.2008); *Baker v. Chisom,* 501 F.3d 920, 922 (8th Cir.2007) (holding Arkansas saving statute applicable to § 1983 claims). The savings statute provides in full:

> If an action duly commenced within the time limited in this chapter is dismissed for insufficient service of process by reason of an unavoidable accident or of a default or neglect of the officer to whom

such process is committed or is dismissed because of the death of a party or for any matter of form, or if, after judgment for the plaintiff, the judgment of any court is vacated or reversed, the plaintiff or any person claiming under him may commence a new action for the same cause within one year after the dismissal or other determination of the original action, or after the reversal of the judgment; and if the cause of action by law survives the executor or administrator or the heir or devisee of the plaintiff may commence such new action within said year.

Mass. Gen. L. ch. 260, § 32. In the Defendants' view, the savings statute only applies to the types of insufficient service of process specifically identified above—not, as here, after a suit has been dismissed for failure to comply with the service requirements of Fed.R.Civ.P. 4(j)(2) and Mass. R. Civ. P. 4(d)(3). They argue that the residual clause, "or for any matter of form," refers to other kinds of defects, such as filing an action in the wrong court or lack of personal jurisdiction.

█ Yet both the text of the statute and other courts' interpretation of this language belie the Defendants' position. The statute's residual clause does not express the type of limitation desired by the Defendants, but reflects the legislature's broad purpose to extend the time for filing suits dismissed for "*any* matter of form." Mass. Gen. L. ch. 260, § 32 (emphasis added). One such technicality, as the statute's examples convey, is defective service of process. Massachusetts courts have long interpreted the statute with precisely this breadth: "The provisions of G.L. c. 260, § 32, are to be construed liberally, in the interest of determining the parties' rights on the merits." *Boutiette v. Dickinson,* 54 Mass.App.Ct. 817, 818, 768 N.E.2d 562 (2002); *see Liberace v. Con-*

*way,* 31 Mass.App.Ct. 40, 42, 574 N.E.2d 1010 (1991) (identifying a "disposition not to clip the wings of the statute through narrow interpretation, so long as the plaintiff had given the defendant timely notice of recourse to a court"); *Coffin v. Cottle,* 33 Mass. 383, 16 Pick. 383, 385–86 (1835) (describing § 32's predecessor, Stat. 1786, ch. 52, § 1, as a "remedial statute" to be given liberal construction where "the plaintiff has been defeated by some matter not affecting the merits"); *Loomer v. Dionne,* 338 Mass. 348, 352, 155 N.E.2d 411 (1959) (suggesting that only a case of "gross negligence" will preclude a plaintiff from taking advantage of ch. 260, § 32). Accordingly, the Court finds that the Massachusetts savings statute may apply to a suit dismissed for the reasons here.

Even if the savings statute attaches to Chao's second complaint, the Defendants argue that it should only reach back to the date on which they had "actual notice" of Chao's lawsuit. As they point out, the "touchstone for what constitutes dismissal for reasons of matter of form is whether, within the original statute of limitations period, the defendant had actual notice that a court action had been initiated." *Hallisey v. Bearse,* 60 Mass.App.Ct. 916, 916, 805 N.E.2d 515 (2004) (quoting *Liberace,* 31 Mass.App.Ct. at 44, 574 N.E.2d 1010). In support, the Defendants have now submitted affidavits stating that they did not receive actual notice of Chao's lawsuit until they were served individually, on dates ranging from March 12 to April 26, 2007. *See* Dietrick Letter and Affidavits (document # 51). They argue that these dates, provided in affidavits to the Court, should operate as the threshold for the limitations period.

Defendants' representations cause serious concern. The affidavits are virtually identical, and each contains a single paragraph. They provide no details, only a statement that the relevant individual did not know about Chao's lawsuit until a given date. *Id.* The Court does not comprehend how, given successful service of the original complaint on the Attorney General's office in September 2006 and defense counsel's limited appearance in that case on February 2007, the Defendants could have remained unaware of this lawsuit. *See* Executed Summons (Case No. 06–cv–11351, document # 6–11); Dietrick Notice of Appearance (Case No. 06–cv–11351, document # 12). The issue before the Court is not the formalities of proper service, but the fact of actual notice. Do Defendants take the position that no one in the Attorney General's office told them that they had been sued, even after that office accepted service for the individual defendants in their official capacity? Likewise, do Defendants take the position that counsel entered his appearance in this case without so much as consulting the individual defendants? Defendants are **ORDERED** to supplement their responses, addressing when they had actual notice of Chao's original suit, by **July 13, 2009.**

Importantly, even if the Court were to accept the Defendants' affidavits at face-value, Chao's suit would survive. Applying the statute of limitations to the date of actual notice, as the Defendants urge, would exclude only a portion of the events at issue. It would bar claims arising from events prior to March or April 2004, but neither party disputes that the sexual encounters continued until at least May 2004. For this reason alone, the statute of limitations is not a proper ground for dismissal of this action. Whether actual notice occurred soon after September 29, 2006, when the original complaint was served on the Attorney General's office, or some point in early 2007, the case will go forward in some form. The Court shall reserve a final ruling on the scope of Chao's claims in light of the savings statute, until

it receives the Defendants' supplemental affidavits.

## C. Personal Involvement

■ The Defendants further argue for dismissal based on the Plaintiff's failure to adequately plead their personal involvement, as she must. *See Robertson v. Sichel,* 127 U.S. 507, 515–16, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) (barring recovery from public officers on a theory of vicarious liability or respondeat superior). They claim that Chao's pleadings amount to nothing more than conclusory allegations that they failed to train, supervise, and investigate repeated rumors of Ballista's sexual misconduct.

■ Notice pleading, however, remains the rule in federal courts, requiring only "a short and plain statement of the claim." *See* Fed.R.Civ.P. 8(a). While a plaintiff's claim to relief must be supported by sufficient factual allegations to be "plausible" under *Twombly,* nothing requires a plaintiff to prove her case in the pleadings. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility, as the Supreme Court's recent elaboration in *Ashcroft v. Iqbal* makes clear, is a highly contextual enterprise—dependent on the particular claims asserted, their elements, and the overall factual picture alleged in the complaint. —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir. 2009) ("[T]he court's assessment of the pleadings is context-specific, requiring the reviewing court to draw on its judicial experience and common sense.") (internal quotation marks omitted).

In *Iqbal,* a deeply divided Court rejected the plaintiff's discrimination claims against high-ranking Bush administration officials because he had not offered sufficient factual allegations to plausibly support the inference of discriminatory intent. *Id.* at 1952. Iqbal's complaint failed to supply enough supporting facts to nudge his claim of purposeful discrimination "across the line from conceivable to plausible." *Id.* (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). Ever-present in the majority's opinion was the fact that these high-ranking officials faced an unprecedented attack on American soil, "perpetrated by 19 Arab Muslim hijackers." *Iqbal,* 129 S.Ct. at 1951. In the absence of additional facts suggesting discriminatory purpose, the majority found Iqbal's claims drowned out by the "obvious alternative explanation"— namely, that Iqbal's arrest was justified by a "nondiscriminatory intent to detain aliens . . . who had potential connections to those who committed terrorist acts." *Id.* at 1951. Reaching their own conclusion about the defendants' state of mind, the majority simply found Iqbal's claim improbable.

■ Plausibility, in this view, is a relative measure. Allegations become "conclusory" where they recite only the elements of the claim and, at the same time, the court's commonsense credits a far more likely inference from the available facts. *See Maldonado,* 568 F.3d at 268. This analysis depends on the full factual picture, the particular cause of action, and the available alternative explanations. Yet in keeping with Rule 8(a), a complaint should only be dismissed at the pleading stage where the allegations are so broad, and the alternative explanations so overwhelming, that the claims no longer appear plausible. *See Thomas v. Rhode Island,* 542 F.3d 944, 948 (1st Cir.2008) (juxtaposing Rule 8(a)'s fair notice and plausibility requirements, as interpreted in *Twombly* ).

■ Judged on these terms, Chao's allegations of personal involvement by the Defendants are more than adequate. She claims that, over the course of a year, she

and Ballista engaged in 50 to 100 sexual encounters in a closed prison facility, without detection. *See* Second Am. Compl. ¶ 9. She also alleges that Ballista had a sexual relationship with at least one other female inmate. *Id.* at ¶ 20. She alleges that rumors repeatedly circulated about Ballista's sexual contact with her, eventually prompting Ballista to be reassigned to different duties, yet the sexual encounters continued. *Id.* at ¶¶ 22–29. In fact, she alleges that "after or about the time that these rumors surfaced," she was transferred to the facility's third floor where Ballista was "regularly posted" and that he was permitted to work the 11:00 p.m. to 7:00 a.m. shift—allowing him easier access to Chao. *Id.* at ¶¶ 62–64. She alleges that, even after his subsequent reassignment to the central control room, other officers at the facility allowed Ballista to leave his post and access the areas where female inmates, including Chao, were housed. *Id.* at ¶¶ 29–37. Finally, she alleges that SMCC's nursing staff placed her on oral contraceptive pills during the relevant period. *Id.* at ¶¶ 57–58.

Together, these factual allegations raise the plausible inference that, given their supervisory duties and security responsibilities, the Defendants failed to adequately train, supervise, or investigate Ballista's year-long sexual encounters with Chao. They encompass also a failure to adopt policies and procedures within the DOC that would have prevented the sexual abuse alleged in the complaint. *See Camilo–Robles v. Hoyos*, 151 F.3d 1, 6–7 (1st Cir.1998) (recognizing that a supervisor "may be liable under section 1983 if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another"); *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 582 (1st Cir.1994) (holding that a supervisor may be liable for the "foreseeable consequences" of his conduct or policy judgments, even without actual knowledge of a civil rights violation, if he would have known but for his "deliberate indifference or willful blindness"). Given the public attention devoted to sexual abuse in prisons writ large, and the repetitive, longlasting abuse alleged in this case, it is a fair inference from the pleadings that prison officials—including Commissioner Dennehey—were deliberately indifferent to the risks and reality of this abuse.[2] *See, e.g.*, Prison Rape Elimination Act of 2003, Pub. L. No. 108–79, 117 Stat. 972 (2003).

These allegations and inferences, if proven, would entitle Chao to relief under the Fourteenth Amendment or the Eighth Amendment. *See Breithaupt v. Abram*, 352 U.S. 432, 435, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) (sustaining substantive due process claims where state action shocks the conscience); *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.") (quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). To be sure, discovery may ultimately reveal an alternative picture, showing that the Defendants made every reasonable effort to prevent the alleged abuse. But Chao has presented sufficient facts, at a stage where her factual allegations must be taken as true, to overcome that alternative for the time being. *See Maldonado*, 568 F.3d

2. Notably, the state of mind required to make out a supervisory claim under the Eighth Amendment—i.e., deliberate indifference—requires less than the discriminatory purpose or intent that Iqbal was required to allege in his suit against Ashcroft and Mueller. *See Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1951–52, 173 L.Ed.2d 868 (2009). Together with the other contextual factors discussed above, what qualifies as a fair or credible inference from the facts alleged in the pleadings must be calibrated accordingly.

at 268 (citing *Iqbal*, 129 S.Ct. at 1949). While the Defendants' personal involvement will be further tested at the summary judgment stage, Chao's claims have met the crucial threshold of plausibility and survive the Defendants' Motion to Dismiss.

## D. Qualified Immunity

Finally, the Defendants claim that qualified immunity requires dismissal of Chao's suit. So far as the Court can ascertain, the Defendants argue that they are entitled to immunity principally because Chao herself denied the sexual relationship when asked by SMCC security officers. In this view, her denials, by themselves, operate as a "reasonable" basis for officials' failure to uncover and stop the sexual abuse far sooner.

Defendants' claim is, in a word, extraordinary. The notion that a woman prisoner's denials should end the inquiry is to suggest that the prisoner is an independent actor, just like any other citizen. Decades worth of litigation and research belie this premise. *See, e.g., Kane v. Winn,* 319 F.Supp.2d 162, 186 (D.Mass. 2004) ("It is difficult enough for a woman to confront her assailant outside of prison, and the fact that an accused prison guard and his colleagues can and frequently do retaliate against a prisoner who complains makes any report a tremendous act of courage.") (citing Human Rights Watch, *All Too Familiar: Sexual Abuse of Women in U.S. State Prisons* (1996), *available*

*at* http://hrw.org/reports/1996/Us1.htm); *Not Part of My Sentence: Violations of the Human Rights of Women in Custody* (1999), *available at* http:// web.amnesty.org/library/Index/engAMR510011999 ("Incarcerated and formerly incarcerated women ... and correctional authorities and other people familiar with the environment of jails and prisons, consider that sexual relations between staff and inmates are inherently abusive of the inmates and can never be truly consensual, even if initiated by inmates, simply because of the considerable difference in power between the parties.").[3] The Plaintiff was a prisoner, in an environment controlled 24 hours a day, whose conditions of confinement depended, at bottom, upon the good will and professionalism of those around her.

Moreover, precisely because this was a controlled environment, prison officials had considerable sources of information beyond Chao. Indeed, the Defendants' position is ironic: Prison officials constantly come before the Court insisting that prisoners' expectations of privacy are diminished; on this basis, they seek to justify their authority to monitor phone calls and prison mail, to control the daily activities of the prisoners, and to gather intelligence information of all kinds. Yet here the Defendants suggest—improbably, to be sure—that their principal source of information was Chao and that their liability ends with her denials.

---

**3.** *See also* National Prison Rape Elimination Commission, *Final Report* 11, 34–39 (June 23, 2009), *available at* http://nprec.us/files/pdfs/NPREC_FinalReport.PDF; U.N. Econ. & Soc. Council [ECOSOC], *Report of the Special Rapporteur on Violence Against Women, Addendum: Report of the Mission to the United States of America on the Issue of Violence Against Women in State and Federal Prisons,* U.N. Doc. E/CN.4/1999/68/Add.2 (Jan. 4, 1999), *available at* http://www.unhcr.ch; Amnesty International; Human Rights Watch,

*Nowhere To Hide: Retaliation Against Women in Michigan State Prisons* (1998), *available at* http://www.hrw.org/legacy/reports98/women ("Virtually all of the women incarcerated in Michigan who were interviewed for *All Too Familiar* and who had lodged complaints of sexual harassment or abuse have suffered some form of retaliation by the accused officer, his colleagues, or other inmates."); Stephen J. Schulhofer, *Unwanted Sex: The Culture of Intimidation and the Failure of Law* 6 (1998).

 The Court cannot find the Defendants immune from suit on this record. It is clearly established that the sexual exploitation of prisoners by prison guards or officials amounts to a constitutional violation. *See Schwenk v. Hartford,* 204 F.3d 1187, 1197 (9th Cir.2000) ("In the simplest and most absolute terms, the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established ... and no reasonable prison guard could possibly have believed otherwise."); *Daskalea v. District of Columbia,* 227 F.3d 433, 440 (D.C.Cir.2000) (affirming prisoner's Eighth Amendment claim after prison guards sexually assaulted her and forced her to do a strip tease with other female prisoners); *Berryhill v. Schriro,* 137 F.3d 1073, 1076 (8th Cir.1998) ("Certainly, sexual or other assaults are not a legitimate part of a prisoner's punishment."); *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir.1998) ("Clearly plaintiffs' deprivations resulting from the sexual assaults are sufficiently serious to constitute a violation under the Eighth Amendment."). Cf. *Farmer v. Brennan,* 511 U.S. 825, 833–34, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'") (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)); Mass. Gen. L. ch. 268, § 21A (criminalizing sexual relations, of any kind, between guards and prisoners).

 For the purpose of these officials, the sole question is whether an objectively reasonable defendant would have believed (1) that the DOC policies and training were sufficient to prevent the sexual abuse that occurred; and (2) that the DOC/SMCC investigation was sufficient to stop this abuse once rumors of Ballista's misconduct began to circulate within the prison. *See Carter v. Lindgren,* 502 F.3d 26, 29 (1st Cir.2007) (describing qualified immunity standard); *Maldonado v. Fontanes,* 568 F.3d 263, 269–70 (1st Cir.2009) ("[T]he salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional"). Given the extent of the sexual abuse, the numerous warning signs alleged, and the available sources of information, the Court cannot say that the Defendants' procedures and investigation meet even the generous qualified immunity standard at present. They, of course, will have an opportunity to renew this defense at summary judgment.

## III. *MOTION TO AMEND*

### A. Defendant Spencer

The Plaintiff seeks to add Carl Spencer, Former Director of Security for SMCC, as a defendant in this case. He allegedly interviewed and verbally threatened Chao about keeping quiet when rumors about the sexual relationship with Ballista began to circulate. Second Am. Compl. ¶¶ 45–47 (document # 37). Spencer, however, was not named in any previous complaint filed in either this case or the earlier action. Plaintiff claims that Spencer was omitted only because he left SMCC shortly after her release, and thus he did not appear on the personnel roster when her lawyers did their initial research. Whatever the cause, the Defendants argue that this omission bars any claims against Spencer under the statute of limitations. Since Spencer was not named in the original complaint, the present effort to add him as a defendant is unaffected by the savings statute analysis above. Claims against him are therefore barred, as of mid–2007, unless Spencer's addition relates back to one of the earlier filings under Fed.R.Civ.P. 15(c).

 Recognizing this limitation, Chao urges the Court to find that this amendment relates back to her original suit.

While it is clear that Spencer's addition presents a claim arising out of the same conduct, transaction, or occurrence set out in the original pleading, the Plaintiff must also show that Spencer had notice of the action within the period prescribed by Fed.R.Civ.P. 4(m). *See* Fed.R.Civ.P. 15(c)(1)(C). Chao offers three theories by which Spencer received notice of her lawsuit: (1) his "identity of interest" with supervisors and colleagues who were named in the complaint; (2) the "shared attorney" principle, because the same lawyer represents all the DOC employees besides Ballista and would presumably represent Spencer if brought into this action; and (3) Spencer's alleged participation in violating Chao's civil rights. On the limited record before the Court, none of these theories is availing.

 Chao argues that Spencer had sufficient identity of interest with the named Defendants, as a DOC employee, to infer that he had timely notice of this suit. The First Circuit has described the "identity of interest" test as follows:

> As to defendants, identity of interest typically means that parties are "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." ... The identity of interest requirement reflects this line of thought; it "ensures that the old and new plaintiffs are sufficiently related so that the new plaintiff was in effect involved in [the proceedings] unofficially from an early stage."

*Young v. Lepone,* 305 F.3d 1, 15 (1st Cir. 2002) (internal citations omitted). For example, courts have held that there is sufficient identity of interest between corporate officers and their corporation to presume that an officer inadvertently omitted from the complaint had notice. *See, e.g., In re Xchange Inc. Secs. Litig.,* 2002 WL 1969661, at *4 (D.Mass.2002) (citing *Serrano v. Gonzalez,* 909 F.2d 8, 12 (1st Cir.1990)). But the same inference does not extend to non-management employees. *See Miller v. Hassinger,* 173 Fed.Appx. 948, 956 (3d Cir.2006) ("[A] non-management employee ... does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee for Rule 15(c)(3) purposes."). Indeed, the Third Circuit has expressly held that notice to the Pennsylvania Department of Corrections was insufficient to impute notice to low-level employees under Rule 15. *Singletary v. Pa. Dep't of Corr.,* 266 F.3d 186 (3d Cir.2001); *see Garvin v. City of Philadelphia,* 354 F.3d 215 (3d Cir.2003). In this case, there is no evidence that Spencer was involved in the litigation, formally or informally, prior to his inclusion in the most recent amended complaint. Indeed, by the Plaintiff's admission, Spencer left SMCC prior to her filing suit, making the notion that he received notice from his former counterparts especially difficult to credit.

 Separately, the Plaintiff suggests that the Defendants' shared attorney would have provided notice of the suit to Spencer. But the "shared attorney" principle "requires that a plaintiff demonstrate that there was 'some communication or relationship' between the attorney for the named defendants and the part[y] sought to be added as defendant [ ]." *See Miller,* 173 Fed.Appx. at 956. Addressing this rule in some detail, the Third Circuit has held that the applicable test "is not whether new defendants will be represented by the same attorney, but rather whether the new defendants are being represented by the same attorney." *Garvin,* 354 F.3d at 223. At present, the Court has no evidence that Attorney Dietrick, who serves as counsel for the Defendants, ever communicated with Spencer about the lawsuit

prior to his inclusion in the amended complaint and during the 120–day period fixed by Rule 4(m). It is not enough that Dietrick *would* represent Spencer if the Court permitted his addition.

 Finally, Spencer's alleged involvement in the events at issue does not, by itself, constitute notice. "[N]otice requires knowledge of the filing of suit, not simply knowledge of the incident giving rise to the cause of action." *Morel v. DaimlerChrysler AG*, 565 F.3d 20, 26 (1st Cir.2009) (citing *Singletary*, 266 F.3d at 195). Because the Plaintiff has not met the notice requirement of Rule 15(c), her effort to add Spencer as a defendant is **DENIED.**

### B. Defendant Dennehey

██ Finally, the Defendants point out that Chao's Second Amended Complaint omits all mention of DOC Commissioner Dennehey apart from naming her in the caption. The Plaintiff responds that her omission was inadvertent, a mistake resulting from her effort to add Spencer, and that Dennehey has been included in the suit since its inception. *See, e.g.,* Compl. ¶¶ 4, 42 (Case No. 06–cv–11351, document # 6–11). Chao insists that she continues to assert her claims against Dennehey.

Because this error appears technical in nature—the result of extremely careless re-drafting—and poses no prejudice to Defendant Dennehey, given her involvement in this suit from its beginning, the Court will not dismiss her as a defendant. *See O'Loughlin v. Nat'l R.R. Passenger Corp.*, 928 F.2d 24, 26 (1st Cir.1991) (permitting amendments that correct technical errors where such corrections do not assert a new claim for relief); Fed.R.Civ.P. 15(a)(2). Like the other Defendants, Dennehey will have a further opportunity to challenge her inclusion in this suit, on qualified immunity grounds, at summary judgment.

The Plaintiff is directed to file an amended complaint, which corrects this error and reincorporates her *previous* allegations against Dennehey, by **July 13, 2009.** The updated complaint should not propose new substantive changes; it should simply reflect the Court's rulings in this Memorandum.

### IV. *CONCLUSION*

Because the Court can identify no basis for dismissing this action at the present juncture, the case shall proceed to discovery. At the same time, the parties shall submit the following by **July 13, 2009:**

1. Defendants' supplemental affidavits, addressing when they had actual notice of Chao's original suit;

2. Plaintiff's Amended Complaint, reincorporating the previous allegations against Defendant Dennehey, consistent with the Court's rulings above;

3. A Joint Discovery Plan for the Court's approval, noting any points of disagreement.

For the foregoing reasons, the Defendants' Motion to Dismiss (document # 42) is **DENIED,** and Plaintiff's Motion to Amend (document # 39) is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**